IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MEGATEL HOMES, LLC; MEGATEL HOMES II, LLC; and MEGATEL HOMES III, LLC,** | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:20-cv-00688-L** |
| **MEHRDAD MOAYEDI; UNITED DEVELOPMENT FUNDING, L.P.; UNITED DEVELOPMENT FUNDING II, L.P.; UNITED DEVELOPMENT FUNDING III, L.P.; UNITED DEVELOPMENT FUNDING IV; UNITED DEVELOPMENT FUNDING INCOME FUND V; UMT SERVICES INC.; UMT HOLDINGS, L.P.; HOLLIS GREENLAW; THEODORE F. ETTER; BENJAMIN WISSINK; and BRANDON JESTER,** | § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are the UDF Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 47), filed January 12, 2022, and Defendant Mehrdad Moayedi's Motion to Dismiss Plaintiffs' First Amended Complaint and Brief in Support (Doc. 49), filed January 12, 2022. After careful consideration of the motions, legal briefs, pleadings, and applicable law, the court, for the reasons stated herein, **denies** the UDF Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and **denies** Defendant Mehrdad Moayedi's Motion to Dismiss Plaintiffs' First Amended Complaint.

I.        **Factual and Procedural Background**

This case is the subject of two prior memorandum opinions. *See Megatel Homes, LLC v. Moayedi et al.*, No. 3:20-cv-00688-L, 2021 WL 5360509 (N.D. Tex. Nov. 16, 2021) ("*Megatel I*"); *Megatel Homes, LLC v. Moayedi et al.*, No. 3:20-cv-00688-L, 2021 WL 5325919 (N.D. Tex. Nov. 16, 2021) ("*Megatel II*"). The court assumes the parties' familiarity with *Megatel I* and *Megatel II* and recounts only the background facts and procedural history necessary to understand this decision.

This case arises out of an alleged scheme to defraud a Texas homebuilding company comprised of Megatel Homes, LLC, Megatel Homes II, LLC, and Megatel Homes III, LLC (collectively, "Megatel"). On March 20, 2020, Megatel filed its Original Complaint (Doc. 1) against Defendant Mehrdad Moayedi ("Mr. Moayedi"), founder and operator of Centurion American Custom Homes d/b/a Centurion American Development Group (collectively, "Centurion"), a real estate development company. He also sued the UDF Defendants—various entities comprising a family of investment funds that finance land development projects, as well as the founders and employees of those entities.[1]

In the Original Complaint, Megatel alleged that since the inception of United Development Funding, L.P. ("UDF I") in or around 2003, Centurion and its affiliates were some of its largest borrowers. Orig. Compl. ¶ 3. During this time, "Centurion frequently contracted with Megatel to serve as a primary builder on land development projects predominately financed by UDF [I]." *Id.*

_____

[1] For purposes of this opinion, "UDF Defendants" refer to Defendants United Development Funding, L.P.; United Development Funding II, L.P.; United Development Funding III, L.P.; United Development Funding IV; United Development Funding Income Fund V; UMT Services, Inc.; UMT Holdings, L.P.; Hollis Greenlaw ("Mr. Greenlaw"); Theodore F. Etter ("Mr. Etter"); Benjamin Wissink ("Wissink"); and Brandon Jester ("Mr. Jester"). The court sometimes refers to the non-individual UDF Defendants as the "UDF Entities."

¶ 4. By 2011, however, Centurion and UDF I experienced financial trouble, leading Mr. Moayedi and UDF I to "surreptitiously and behind closed-doors scheme[] to keep themselves afloat." *Id.* ¶ 5. The Original Complaint alleges that Mr. Moayedi "fraudulently induced" Megatel to enter into various real estate contracts and amendments to obtain "earnest money and other benefits from Megatel" to repay his UDF I loans. *Id.* ¶ 6. It further alleges that Mr. Moayedi and the UDF Defendants "syphoned hundreds of millions of dollars off loans[,] intended for the development of projects for which Megatel had contracted[,] for their own personal enrichment." *Id.* ¶ 9.

Based on these and other allegations set forth in detail by the court in *Megatel I* and *Megatel II*, Megatel asserted claims against Mr. Moayedi for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. §§ 1962(a)-(c), and a RICO conspiracy claim against Mr. Moayedi and the UDF Defendants under 18 U.S.C. § 1962(d). *See id.* ¶¶ 39-58. As underlying "predicate acts," Megatel alleged that Mr. Moayedi and the UDF Defendants committed wire fraud and mail fraud (in violation of 18 U.S.C. §§ 1341 and 1343) and interstate transportation of stolen property (in violation of 18 U.S.C. § 2314). *See id.* ¶¶ 32-33. Megatel also asserted claims against Mr. Moayedi for common-law fraud, fraudulent inducement, and statutory fraud, as well as claims against the UDF Defendants for aiding and abetting fraud. *See id.* ¶¶ 69-72.

On May 18, 2020, the UDF Defendants and Mr. Moayedi each moved to dismiss Megatel's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[2] On November 16, 2021,

---

[2] On May 18, 2020, the UDF Entities and Mr. Etter filed a motion to dismiss. On June 26, 2020, Messrs. Greenlaw, Wissink, and Jester filed their separate motion to dismiss, incorporating by reference the UDF Entities and Mr. Etter's arguments and authorities. On September 26, 2021, the court allowed them to join the UDF Entities and Mr. Etter's motion to dismiss. Order, Doc. 34.

the court granted the motions in part and denied them in other part. *See Megatel I*, 2021 WL 5360509; *Megatel II*, 2021 WL 5325919.

With respect to the UDF Defendants' motion to dismiss the Original Complaint, the court determined that Megatel had adequately alleged predicate acts of mail fraud; a pattern of racketeering activity; a RICO enterprise; and a RICO conspiracy under 18 U.S.C. § 1962(d). *Megatel I*, 2021 WL 5360509, at *5-8. The court, therefore, denied the UDF Defendants' motion to dismiss with respect to Megatel's claims for RICO conspiracy to the extent the conspiracy was based on predicate acts of mail fraud. *Id*. at *8. As for its RICO claims based on the predicate acts of wire fraud under 18 U.S.C. § 1343, however, the court concluded that Megatel failed to allege "any facts" supporting an inference that Mr. Moayedi and the UDF Defendants used interstate communications to further an alleged scheme to defraud, as required to plead a viable claim for wire fraud pursuant to Federal Rule of Civil Procedure 9(b). *Id.* at *5. As for its RICO claims based on interstate transportation of stolen property under 18 U.S.C. § 2314, the court determined that Megatel failed to sufficiently allege the predicate act of interstate transportation of stolen property under 18 U.S.C. § 2314 because it failed to allege "any facts" supporting an inference that more than $5,000 in fraudulently-obtained funds was actually "transported interstate." *Id.* at *6. The court granted the UDF Defendants' motion to dismiss the deficient claims and dismissed these claims without prejudice. The court allowed Megatel leave to replead the deficient claims:

> Specifically, [Megatel] must amend and replead [its] claims related to the predicate acts of wire fraud, in violation of 18 U.S.C. § 1343, and interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. If the amended pleading fails to cure the deficiencies noted by the court, [Megafund's] deficient claims will be dismissed with prejudice pursuant to Rule 12(b)(6).

*Id.* at *9. Finally, with regard to Megatel's claim against the UDF Defendants for aiding and abetting fraud, the court determined it failed as a matter of law and dismissed the claim with prejudice. *Id*. at *8.

After considering Mr. Moayedi's motion to dismiss the Original Complaint, the court determined that Megatel had adequately alleged RICO claims under Sections 1962(a) and (c), as well as under Section 1962(d), to the extent those claims were based on predicate acts of mail fraud, and that these claims were not time-barred under the applicable four-year statute of limitations. *Megatel II*, 2021 WL 5325919, at *4, *7-9. The court, therefore, denied Mr. Moayedi's motion to dismiss with respect to these claims. The court concluded, however, that Megatel had failed to allege adequately that Mr. Moayedi committed predicate acts of wire fraud and interstate transportation of fraudulently-obtained property or that he violated 18 U.S.C. § 1962(b). *Id.* at *4, *7. The court also determined that Megatel failed to allege sufficiently common-law fraudulent inducement and statutory fraud. *Id.* at *8-9. With respect to the deficient claims, the court granted Mr. Moayedi's motion to dismiss and dismissed these claims without prejudice. *Id.* at *10. The court, however, granted Megatel leave to replead the deficient claims:

> Specifically, [Megatel] must amend the following claims: (1) that [Mr. Moayedi] committed the predicate acts of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, and wire fraud, in violation of 18 U.S.C. § 1343; (2) that [he] violated 18 U.S.C. § 1962(b); (3) common law fraud; and (4) statutory fraud. If the amended pleading fails to cure the deficiencies noted by the court, [Megatel's] deficient claims will be dismissed with prejudice pursuant to Rule 12(b)(6).

*Id.*

Megatel timely filed a First Amended Complaint (Doc. 37). Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), the UDF Defendants now move to dismiss those claims the court previously dismissed without prejudice, arguing that Megatel's allegations in the First

Amended Complaint are insufficient to cure the pleading deficiencies identified in *Megatel I*. Mr. Moayedi moves to dismiss all claims in the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), *even those claims the court previously found had been adequately alleged*. Megatel opposes the motions in two separate responses. After setting forth the applicable legal standards, the court will consider the pending motions to dismiss.

## II.    Legal Standards

### A.  Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to reasonably infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal

conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## B.  Rule 9(b) – Heightened Standard for Pleading Fraud

All claims for fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (applying the heightened pleading requirements to statutory claims based on allegations of fraud, as "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud on not."). "Thus, allegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993); *see Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994) (holding that while Rules 8 and 9(b) are to be harmonized, "Rule 8 has never been read to eviscerate Rule 9(b)'s requirement that an averment of fraud must be stated with particularity."). "This standard is derived from concerns that unsubstantiated charges of fraud can

irreparably damage a defendant's reputation." *Norman*, 19 F.3d at 1022. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179).

## III.   Analysis

### A.   The UDF Defendants' Motion to Dismiss First Amended Complaint

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), the UDF Defendants move to dismiss the claims the court previously found deficient in *Megatel I*. They argue that Megatel's amended allegations fail to adequately allege (1) predicate acts of wire fraud that meet the heightened pleading requirement of Rule 9(b); and (2) predicate acts of interstate transportation of stolen property that meet the requirements of Rule 8(a) and Rule 12(b)(6). The court, therefore, must decide whether Megatel has cured its deficient allegations that the UDF Defendants violated RICO via the predicate acts of wire fraud, in violation of 18 U.S.C. § 1343, and interstate transportation of stolen property, in violation of 18 U.S.C. § 2314.

#### 1.   Predicate Act of Wire Fraud

To survive the UDF Defendants' motion to dismiss their RICO conspiracy claim to the extent it is based on the predicate act of wire fraud, Megatel must set out sufficient allegations to support an inference that there existed: "(1) a scheme to defraud and (2) the use of interstate communications in furtherance of the scheme." *United States v. Gordon*, 780 F.2d 1165, 1171 (5th Cir. 1986) (citing *United States v. Cowart*, 595 F.2d 1023, 1031 n.10 (5th Cir. 1979)). It is not

necessary that a wire transmission contain a falsehood for purposes of establishing wire fraud; rather, it must only promote the scheme in some manner. *United States v. Hoffman*, 901 F.3d 523, 546 (5th Cir. 2018) ("So while the mailing or wire must promote the scheme in some manner, it need not contain a falsehood.") (citation omitted). Even "[a]n interstate email that says 'Meet me at the bowling alley tonight' can serve as the necessary wire if the parties planned the fraud while bowling a few frames that evening." *Id.*

In *Megatel I*, the court determined that Megatel adequately alleged "facts to support an inference that a scheme to defraud existed. They allege that Mr. Moayedi, along with UDF, schemed to induce them to enter into contracts with Centurion-affiliated entities to use funds provided by Megatel to 'prop each other up,' instead of performing under the contracts." *Megatel I*, 2021 WL 5360509, at *5. The court concluded, however, that Megatel (a) "failed to allege any facts that allow the court to reasonably infer the use of interstate communications in furtherance of the scheme alleged"; and (b) "fail[ed] to comply with Rule 9(b) on this issue." *Id.* For these reasons, in *Megatel I*, the court granted the UDF Defendants' motion to dismiss Megatel's RICO claim insofar as it was based on the predicate act of wire fraud.

The UDF Defendants now contend that "[d]espite the voluminous new allegations scattered throughout the First Amended Complaint . . . , Megatel again fails to plead facts allowing this Court to reasonably infer the use of interstate communications in furtherance of the alleged scheme, and again fails to comply with Rule 9(b)." UDF Defs.' Brief in Support of Mot. to Dismiss 7, Doc. 48. The UDF Defendants maintain that Megatel fails to plead specific facts indicating when, where, and how Defendants allegedly used wire communications to further the alleged scheme to defraud. *Id.* at 6-13.

**Memorandum Opinion and Order - Page 10**

In response, Megatel asserts that in "the First Amended Complaint, [it] clarified that it is alleging [Mr.] Moayedi's and the UDF Defendants' use of the wires in furtherance of their fraudulent scheme, not that the wire transmissions themselves contained falsehoods." Pl.'s Resp. to UDF Defs.' Mot. 6, Doc. 52. Megatel contends that because of this distinction, "Rule 9(b) does not require that [it] plead each use of interstate wires with particularity." *Id.* For the reasons explained below, after careful consideration of applicable law and Megatel's amended allegations, the court agrees and concludes that Megatel's amended allegations pertaining to the predicate act of wire fraud satisfy Rule 9(b) and are sufficient to withstand the UDF Defendants' motion to dismiss.

The Honorable Jane J. Boyle has addressed this issue in a similar case involving a complex RICO claim with multiple defendants and allegations that the mail or wires were simply used in furtherance of a scheme to defraud and not that the mail or wires themselves necessarily contained falsehoods. *See Cypress/Spanish Ft. I, L.P. v. Professional Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 711-12 (N.D. Tex. 2011). In that case, she denied the defendants' motion to dismiss a RICO claim based on the predicate acts of wire and mail fraud under Rule 12(b)(6) and Rule 9(b). After setting forth Rule 9(b)'s burden of heightened pleading, she stated:

> Though this burden requires specificity, a "complainant need not, however, state all facts pertinent to a case to satisfy the requirements of Rule 9(b)." *Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924, 927 (S.D. Tex. 1985). "Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *United States v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). In alleging a RICO scheme involving mail or wire fraud, it is not necessary to assert that each defendant personally made fraudulent mailings or wires; rather "Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." *At the Airport v. ISATA*, 438 F. Supp. 2d 55, 61 (E.D.N.Y. 2006). **Where a "plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to**

> defraud . . . Rule 9(b) 'only requires the plaintiff to delineate, with adequate
> particularity, the specific circumstances constituting the overall fraudulent
> scheme.'" *Id.*

*Id.* (emphasis added); *see also Commercial Metals Co. v. Chazanow*, No. CIV. A. 3-09-cv-0808-B, 2009 WL 3853704, at *5 (N.D. Tex. Nov. 17, 2009) ("[H]ere a plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud. . . . Rule 9(b) only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme."); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624 (S.D.N.Y. 2006) ("[W]here the plaintiff claims that the mail or wires were simply used in furtherance of a scheme to defraud, the complaint need not be specific as to each allegation of mail or wire fraud as long as the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants.") (internal quotation marks omitted).

Notably, in *Megatel I*, the court already determined that Megatel adequately alleged a scheme to defraud. *Megatel I*, 2021 WL 5360509, at *5. The court has reviewed the First Amended Complaint and finds that the averments of wire fraud satisfy Rule 9(b) and give sufficient notice to the UDF Defendants of the particulars of the alleged wire fraud. Specifically, the court has analyzed the amended allegations relating to interstate wire transfers of funds (Am. Compl. ¶¶ 32, 36, 38(b), 38(b)(b)); interstate cellphone communications (*id.* ¶ 33); and interstate e-mail communications (*id.* ¶¶ 33, 38(h), 38(x)). Mindful that Megatel is alleging that the UDF Defendants simply used the wires in furtherance of their fraudulent scheme, and not that the wire transmissions themselves necessarily contained falsehoods, the court concludes that the amended allegations plead facts sufficient to meet the requirements of Rule 9(b) and contain "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Otherwise stated, Megatel's amended allegations of the UDF Defendants' use of the wires satisfy its obligation under

Rule 9(b) to plead a fraudulent scheme with particularity, and that, combined with Megatel's specific allegations against each Defendant, gives the UDF Defendants fair notice as to Megatel's claims against them. Megatel will have the burden of presenting evidence to support the critical facts alleged in its First Amended Complaint of interstate wire transfers of funds, interstate cellphone communications, and interstate e-mail communications; however, at this stage, Megatel's allegations must be taken as true. Dismissal of Megatel's RICO claims for failure to plead predicate acts of wire fraud under Rule 12(b)(6) or Rule 9(b) is, therefore, not appropriate. Accordingly, the court **denies** the UDF Defendants' motion to dismiss Megatel's First Amended Complaint on the asserted ground that it insufficiently pleads the predicate act of wire fraud.

## 2.  Predicate Act of Interstate Transportation of Stolen Property

To survive the UDF Defendants' motion to dismiss their RICO conspiracy claim based on the predicate act of interstate transportation of stolen property, Megatel must set forth sufficient allegations to support an inference that the defendants engaged in "(1) the interstate transportation of (2) goods, merchandise, wares, money, or securities valued at $5,000 or more and (3) with knowledge that such items have been stolen, converted, or taken by fraud." *United States v. Onyiego*, 286 F.3d 249, 253 (5th Cir. 2002). In *Megatel I*, while the court determined that Megatel adequately alleged that more than $5,000 was knowingly taken by fraud, it found that "Megatel fail[ed] to allege any facts to support an inference that any of this money was transported interstate." *Megatel I*, 2021 WL 5360509, at *6. The court agreed with the UDF Defendants' motion to dismiss "that Megatel offers mere conclusory statements regarding [the UDF] Defendants (or Mr. Moayedi) allegedly transporting or receiving more than $5,000 in interstate commerce." *Id.*

**Memorandum Opinion and Order - Page 13**

In their present motion to dismiss, the UDF Defendants contend that "Megatel's First Amended Complaint fails to cure the pleading deficiencies in its claim." UDF Defs.' Brief in Support of Mot. to Dismiss 14, Doc. 48. They argue that Megatel's amended allegations pertaining to interstate transportation of stolen goods do not survive their Rule 12(b)(6) motion because the amended allegations "cannot be said to provide the requisite 'fair notice' to the UDF Defendants, or to nudge those claims across the line from conceivable to plausible." *Id.* at 16. In response, Megatel maintains that the "First Amended Complaint contains more than enough factual allegations to cure the pleading deficiency identified by the Court." Pl.'s Resp. to UDF Defs.' Mot. 10, Doc. 52. The court agrees.

In the First Amended Complaint, Megatel alleges that: "Moayedi transferred, or caused Centurion-affiliated entities to transfer earnest money and other funds that he fraudulently obtained from Megatel to UDF via multiple wire transfers routed through UDF's transfer agents located in Missouri and/or California and UDF bank accounts in Louisiana, Arkansas, New York, and/or Canada." First Am. Compl. ¶¶ 32, 38.bb, Doc. 37. By these amended pleadings, the court determines that, unlike in the Original Complaint, Megatel has pleaded sufficient facts to support an inference that Defendants moved money and other funds by interstate means that they fraudulently obtained from Megatel. As such, it concludes that Megatel has sufficiently alleged predicate acts of interstate transportation of stolen property. Dismissal of Megatel's RICO claims for failure to plead predicate acts of interstate transportation of stolen property under Rule 12(b)(6) is, therefore, not appropriate. Accordingly, the court **denies** the UDF Defendants' motion to dismiss Megatel's First Amended Complaint on the asserted ground that it insufficiently pleads the predicate act of interstate transportation of stolen property.

### B.  Mr. Moayedi's Motion to Dismiss

Mr. Moayedi moves to dismiss all claims in the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), even those claims the court previously found had been adequately alleged. *See generally* Mr. Moayedi's Mot. to Dismiss, Doc. 49. In its response, Megatel contends (1) the court should deny Mr. Moayedi's attempt to relitigate those portions of *Megatel II* in which the court determined that Megatel had adequately alleged multiple claims under Rule 9(b) and Rule 12(b)(6); and (2) its amended allegations cure the pleading deficiencies identified by the court in *Megatel II. See generally* Megatel's Resp. to Mr. Moayedi's Mot., Doc. 51.

### 1.  Mr. Moayedi's Motion to Dismiss Those Claims the Court Previously Determined were Adequately Alleged in *Megatel II*

The court first addresses Mr. Moayedi's motion to dismiss those claims the court previously found adequately alleged in *Megatel II*, namely, Megatel's RICO claims under Sections 1962(a) and (c), as well as Megatel's claim for RICO conspiracy under Section 1962(d), to the extent those claims are based on predicate acts of mail fraud. *See Megatel II*, 2021 WL 5325919, at \*4, \*7-9.

In opposition to this portion of Mr. Moayedi's motion to dismiss, Megatel contends:

In a striking display of irreverence for this Court, Moayedi now seeks to rehash each of these issues as if this Court's prior Order never existed. Indeed, Moayedi offers no explanation or argument as to why he believes the Court's previous decision on these issues was wrong; he simply acts as if this Court never decided them. The Court has already spent considerable time and effort carefully analyzing and correctly resolving each of these issues, and Moayedi fails to provide any reason, much less any compelling reason, why the Court should reverse its prior decision. Accordingly, the Court should summarily deny the Motion to the extent it is based on arguments the Court already carefully considered and correctly rejected in its prior Order.

Megatel's Resp. to Mr. Moayedi's Mot. 1-2, Doc. 51.

Memorandum Opinion and Order - Page 15

In reply, Mr. Moayedi contends that the court "granted [his] motion to dismiss [the] original complaint in its entirety but allowed [Megatel] leave to amend." Mr. Moayedi's Reply Brief 1, Doc. 54. In addition, Mr. Moayedi informs the court that Federal Rule of Civil Procedure 54(b) provides the legal basis for reconsideration. *Id.*

Because Mr. Moayedi failed to articulate in his motion that he sought reconsideration under Rule 54(b) but instead waited until his reply brief, the court need not consider his argument. "Arguments raised for the first time in a reply brief are generally waived," as the responding party is deprived of the opportunity to respond to the new argument. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010); *see also AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) ("Generally, and for obvious reasons, a reply brief is limited to addressing matters presented by [the movant's] opening brief and by [the respondent's] response brief, and is not the appropriate vehicle for presenting new arguments or legal theories to the court.") (internal quotations omitted). Nevertheless, because Megatel addressed Rule 54(b) in its response to Mr. Moayedi's motion— and argued that the court should deny Mr. Moayedi's motion for reconsideration under Rule 54(b)—the court will consider his motion to dismiss those claims the court previously found had been adequately alleged in *Megatel II*.

Although the Federal Rules of Civil Procedure do not explicitly provide for motions for reconsideration, Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time "any order or other decision . . . [that] does not end the action." *Austin v. Kroger Texas, L.P.*, 846 F.3d 326, 336 (5th Cir. 2017) (citing Fed. R. Civ. P. 54(b)). Under Rule 54(b), the court generally reconsiders evidence before it at the time of its prior opinion and order; however, "a district court has the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Iturralde*

*v. Shaw Grp., Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013) (internal quotation marks and citation omitted); *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) (Means, J.) ("Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court.") (citation omitted).

In resolving a motion to reconsider an interlocutory order, the court considers, among other things, "whether the movant is attempting to rehash its previously made arguments or is attempting to raise an argument for the first time without justification." *Dos Santos*, 651 F. Supp. 2d at 553 (citation omitted); *see also Grand Famous Shipping Ltd. v. Port of Houston Authority*, __ F. Supp. 3d __, 2021 WL 5359609, at *5 (S.D. Tex. Nov. 16, 2021). ("[A] motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments.") (internal quotation marks and citation omitted). Further, "[t]he discretion to modify an interlocutory order does not eliminate the policy reasons behind discouraging motions for reconsideration [that] rehash the same arguments or, without justification, raise new arguments for the first time." *Grand Famous Shipping*, 2021 WL 5359609, at *5 (internal quotation marks and citation omitted). As such, "motions for reconsideration under Rule 54, like those under Rule 59, serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (internal quotation marks and citation omitted).

First, Mr. Moayedi is plainly mistaken that the court dismissed the Original Complaint in its entirety. As previously explained, after considering Mr. Moayedi's motion to dismiss the Original Complaint, the court determined that Megatel had adequately alleged RICO claims under Sections 1962(a) and (c), as well as under Section 1962(d), to the extent these claims were based on predicate acts of mail fraud, and that these claims were not time-barred under the applicable

four-year statute of limitations. *Megatel II*, 2021 WL 5325919, at *4, *7-9. The court, therefore, denied Mr. Moayedi's motion to dismiss with respect to these claims.

Second, the court agrees with Megatel that Mr. Moayedi's motion "simply rehashes multiple arguments the court already carefully considered and correctly rejected in resolving his first Motion to Dismiss." *See* Megatel's Resp. to Mr. Moayedi's Mot. 6. Further, in his motion, Mr. Moayedi fails to either (i) acknowledge that the court previously decided these issues in *Megatel II*; or (ii) provide any cogent argument that the court committed any manifest error of law or fact in *Megatel II*. Under these circumstances, the court **denies** Mr. Moayedi's motion to dismiss insofar as he argues for dismissal of those claims the court previously found adequately alleged in *Megatel II*, namely, Megatel's RICO claims under Sections 1962(a) and (c), as well as Megatel's claim for RICO conspiracy under Section 1962(d), to the extent based on predicate acts of mail fraud. *See Megatel II*, 2021 WL 5325919, at *4, *7-9.

## 2. Mr. Moayedi's Motion to Dismiss Those Claims the Court Previously Dismissed Without Prejudice in *Megatel II*

Mr. Moayedi contends that Megatel's amended allegations fail to cure the pleading deficiencies noted by the court with respect to Megatel's claims that he committed predicate acts of wire fraud (in violation of 18 U.S.C. § 1343), and that he transported fraudulently-obtained property interstate (in violation of 18 U.S.C. § 2314). He also contends Megatel fails to adequately allege a violation of RICO, 18 U.S.C. § 1962(b); (3) common law fraud; and (4) statutory fraud.

### a. Predicate Acts of Wire Fraud and Interstate Transportation of Stolen Property

Earlier in this opinion, in analyzing the UDF Defendants' motion to dismiss, the court examined in detail Megatel's amended allegations and concluded Megatel had adequately alleged wire fraud (in violation of 18 U.S.C. § 1343), and transportation of fraudulently-obtained property

interstate (in violation of 18 U.S.C. § 2314). *See supra* Sec. III.A.1 and Sec. III.A.2. As such, the court denied the UDF Defendants' motion to dismiss. *Id.*

Mr. Moayedi's arguments in support of dismissal of these claims largely overlap with those made by the UDF Defendants. The court's prior analysis of Megatel's amended allegations, therefore, is equally germane to Mr. Moayedi's motion to dismiss Megatel's amended allegations of wire fraud (in violation of 18 U.S.C. § 1343), and transportation of fraudulently-obtained property interstate (in violation of 18 U.S.C. § 2314). Accordingly, for the same reasons previously articulated by the court in denying the UDF Defendants' motion to dismiss these claims, *see supra* Sec. III.A.1 and Sec. III.A.2, the court **denies** Mr. Moayedi's motion to dismiss Megatel's amended allegations of wire fraud (in violation of 18 U.S.C. § 1343), and transportation of fraudulently-obtained property interstate (in violation of 18 U.S.C. § 2314).

### b.   RICO, 18 U.S.C. § 1962(b)

The court now addresses Mr. Moayedi's contention that Megatel has failed to allege adequately a violation of Section 1962(b) in the First Amended Complaint. *See* Mr. Moayedi's Mot. to Dismiss 16-18, Doc.  49. After carefully examining the amended allegations, the court disagrees.

Section 1962(b) provides: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which, affect interstate or foreign commerce." 18 U.S.C. § 1962(b). To state a claim under Section 1962(b), plaintiffs must set forth sufficient allegations to "show a causal nexus between their injuries and the Defendants' acquisition or maintenance of an interest in the enterprise." *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007); *see also Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir.

1995) ("As to subsection (b), a plaintiff must show that his injuries were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity."). As Megatel correctly notes, "Allegations that a plaintiff's injuries occurred because a defendant maintained control of an enterprise through a pattern of racketeering activity are sufficient to state a claim under Section1962(b)." Megatel's Resp. to Mr. Moayedi's Mot. 17, Doc. 51 (citing *Ambulatory Svcs. of Puerto Rico, LLC v. Sankar Nephrology Grp., LLC*, No. 4:18-cv-916-A, 2019 WL 4192738, at *5 (N.D. Tex. Sept. 3, 2019)) (denying a motion to dismiss a Section 1962(b) claim when plaintiff alleged that its injuries occurred because defendant *maintained* control of a dialysis clinic through a pattern of racketeering activity).

In *Megatel II*, the court held that Megatel did not plead "sufficient facts to support an inference that a nexus exists between [its] alleged injuries and Mr. Moayedi 'gaining an interest in, or control of, the enterprise through a pattern of racketeering activity," because Moayedi "already 'operated and controlled' the alleged enterprise prior to the alleged racketeering activity." *Megatel II*, 2021 WL 5325919, at *7. In response to Mr. Moayedi's motion, Megatel contends that to "cure the pleading deficiency identified by the Court, Megatel added allegations in the First Amended Complaint to clarify that the focus of its Section 1962(b) claim is on Moayedi's maintenance of interests in and control of the RICO enterprise through a pattern of racketeering activity." Megatel's Resp. to Mr. Moayedi's Mot. 17.

In the First Amended Complaint, Megatel alleges that: "fraudulently obtained earnest money was diverted from development projects into the Centurion Enterprise and used to prevent the collapse of the Centurion Enterprise, which, in turn, allowed Centurion to perpetuate the various fraudulent acts detailed herein." First Am. Compl. ¶ 50, Doc. 37. Thus, Megatel is alleging that, through a pattern of racketeering activity, Mr. Moayedi was able to maintain control of the

RICO enterprise and prevent its collapse, which allowed him to continue to perpetrate his alleged fraudulent scheme. The court finds that the First Amended Complaint sufficiently alleges that, in this way, Megatel's injuries occurred because Mr. Moayedi maintained control of the RICO enterprise through a pattern of racketeering activity. After considering the plain language of Section 1962(b), *supra*, as well as case law, the court concludes these amended allegations are sufficient to state a claim under Section 1962(b). *See Abraham*, 480 F.3d at 357; *Crowe*, 43 F.3d at 205; *Ambulatory Svcs.*, 2019 WL 4192738, at *5.

The court, therefore, **denies** Mr. Moayedi's motion to dismiss to the extent he contends that Megatel fails to state a claim under Section 1962(b).

### c. Common Law and Statutory Fraud

In *Megatel II*, the court set forth the elements of common law fraud:

> Texas law recognizes "two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 660 (W.D. Tex. 2019). "Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 304 (5th Cir. 2021) (citation omitted); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). To state a claim of common law fraud under Texas law, a plaintiff must set forth allegations from which the court can infer: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

*Megatel II*, 2021 WL 5325919, at *8.

After recognizing that Megatel was alleging fraudulent inducement, the court determined that "Megatel has alleged facts to support an inference as to each element of this claim, except as to the fourth element. [Megatel] ha[s] not alleged sufficient facts to allow the court to infer that

Mr. Moayedi made a material misrepresentation *with the intent* that Megatel act on it." *Id.* (original emphasis).

The court also recognized that Megatel was alleging statutory fraud under Section 27.01 of the Texas Business and Commerce Code, which provides:

> Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
>
> > (1) false representation of a past or existing material fact, when the false representation is
> >
> > > (A) made to a person for the purpose of inducing that person to enter into a contract; and
> > >
> > > (B) relied upon by that person in entering into that contract.

*Id.* at 9 (quoting Tex. Bus. & Com. Code § 27.01(a)(1)). The court noted that the elements of statutory fraud "are essentially identical to the elements of common law fraud except that the statute does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Id.* at *8 (citing *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 726 (Tex. App.—Waco 1998, pet. denied)).

In *Megatel II*, the court concluded that Megatel

> has not sufficiently pleaded facts to support an inference that Mr. Moayedi made a false representation for the purpose of inducing [it] to enter into a contract. The court cannot properly draw such an inference from [Megatel's] repeated conclusory statement that Mr. Moayedi's intention in making this fraudulent representation was to induce Megatel to forgo its contractually guaranteed right to terminate the agreement.

*Id.* at 9 (internal quotation marks and citation omitted).

The court also concluded that Megatel had not pleaded either its common law or statutory fraud claim "with the particularity required under Rule 9(b), as the court is unable to ascertain

from the pleadings the 'who, what, when, where, and how' with respect to each fraud claim." *Id.* (citation omitted).

In his motion to dismiss, Mr. Moayedi contends that "[n]one of the allegations set forth in the Amended Complaint, and specifically Paragraph 38, [is] sufficient to plead common law or statutory fraud with the [sic] as required by Rule 9(b)." Mr. Moayedi's Mot. to Dismiss 18, Doc. 49. He argues that the Amended Complaint does not contain new allegations from which the court could infer intent and the fraud claims are not pleaded with particularity required under Rule 9(b). *Id.* at 18, 20. In response, Megatel contends that "[c]ontrary to Moayedi's arguments, [its] First Amended Complaint includes additional allegations that are more than sufficient to cure the pleading deficiencies noted by the court." Megatel's Resp. to Mr. Moayedi's Mot. 18, Doc. 51. For the reasons that follow, the court agrees that the amended allegations are sufficient to cure the pleading deficiencies noted by the court in *Megatel II* and to satisfy Rule 9(b).

As set forth above, under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384-85 (5th Cir. 2003) (citing Fed. R. Civ. P. 9(b)). "This second sentence of Rule 9(b) 'relaxes the particularity requirement for conditions of the mind, such as scienter.'" *Id.* (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "[T]o adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of fraud.'" *Id.* (quoting *Tuchman*, 14 F.3d at 1068). "Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *Id.* In addition, the "particularity

demanded by Rule 9(b) necessarily differs with the facts of each case." *Tuchman*, 14 F.3d at 1067-68 (citation omitted).

In Paragraph 38 of the First Amended Complaint, Megatel alleges that, with respect to the Shahan Prairie development, on February 28, 2014, Mr. Moayedi caused an instrumentality of the Centurion Enterprise, Shahan Prairie, L.P., to falsely represent in a Contract of Sale that it would diligently pursue completion of the Shahan Prairie development and construction of improvements. First Am. Compl. ¶ 38.a, Doc. 37. It alleges that Mr. Moayedi caused Shahan Prairie, L.P. to falsely represent to Megatel that completion of the development and improvements would be accomplished within 12 months of the date of the Contract of Sale. *Id.* It also alleges that:

> Moayedi's intention in making these false representations was to fraudulently induce Megatel III into the Contract of Sale, so that Shahan Prairie L.P. could use the Contract of Sale to show an increased potential value for the purported Shahan Prairie development and thereby justify increasing the amount of financing provided by UDF III for the Shahan Prairie development.

*Id.* In addition, Megatel alleges that, on June 2, 2014, "Moayedi fraudulently induced Megatel III to enter into an amendment to the Contract of Sale to increase the number of lots in the purported Shahan Prairie development that Megatel III would be obligated to purchase upon completion," and that he reaffirmed the false promises previously made in the Contract of Sale. *Id.* ¶ 38.b. Megatel contends,

> Moayedi's intention in making this false representation was to induce Megatel III to enter into the amendment, so that Shahan Prairie, L.P. could use the amendment to show an increased potential value for the purported Shahan Prairie development and thereby obtain additional financing from UDF V that it would ultimately use to repay loans from UDF III rather than advance the Shahan Prairie development.

*Id.* Further, Megatel alleges that Mr. Moayedi later sent a fraudulent and backdated notice canceling the Contract of Sale, demonstrating

**Memorandum Opinion and Order - Page 24**

that his intention from the outset was not to perform under the Contract of Sale, but only to induce Megatel III to enter into the Contract of Sale for the purpose of showing an increased potential value for the purported Shahan Prairie development and thereby obtain additional financing from UDF that it could use to repay older loans from UDF and prevent the collapse of the Centurion Enterprise.

*Id.* ¶ 38.c.

In response to Mr. Moayedi's motion to dismiss, Megatel argues:

These allegations are more than sufficient to show Moayedi's motive to commit fraud and thereby give rise to an inference of fraudulent intent. Specifically, these allegations demonstrate that Moayedi had a motive to induce Megatel to enter into a contract—namely, to enable him to show that a reputable home builder had committed to purchasing lots in the Shahan Prairie development, which could justify an increased potential value for the project and further financing from UDF that would be used to repay older loans from UDF rather than advance the development of the project. In other words, Moayedi induced Megatel to enter into the Shahan Prairie Contract of Sale without any intent to perform under the contract, but, instead, to enable him to obtain further financing from UDF that he would use to prevent the collapse of Centurion, prop up UDF, and perpetuate the Defendants' fraudulent scheme.

Megatel's Resp. to Mr. Moayedi's Mot. 20.

The court previously concluded in *Megatel II* that Megatel's allegations "support an inference that a scheme to defraud existed,"—namely, that "Mr. Moayedi, along with UDF, schemed to induce [Megatel] to enter into contracts with entities affiliated with Mr. Moayedi to use the funds provided by Megatel to 'prop each other up,' instead of performing under the contracts." *Megatel II*, 2021 WL 5325919, at *4 (citation omitted). The court agrees with Megatel that the additional allegations in the First Amended Complaint are "more than sufficient to allow the Court to infer that Moayedi made material misrepresentations to Megatel with the intent that Megatel would act upon them and for the purpose of furthering the Defendants' fraudulent scheme." Megatel's Resp. to Mr. Moayedi's Mot. 21.

Numerous other paragraphs in the First Amended Complaint make similar allegations with respect to additional contracts and developments in which Megatel alleges Mr. Moayedi fraudulently induced it to participate for the purpose of furthering the Defendants' alleged fraudulent scheme. *See, e.g.,* First Am. Compl. ¶¶ 38.k-l, o, x, y, cc-ee, hh, kk, Doc. 37. As with the amended allegations concerning the Shahan Prairie Development, Megatel alleges Mr. Moayedi's intent in inducing Megatel to enter into the contracts was to: (1) obtain earnest money from Megatel that it could use to repay older loans from UDF to prevent the collapse of the Centurion Enterprise; and (2) show that a reputable home builder had committed to purchasing lots in Centurion developments, which could justify increased potential valuations for the projects and further financing from UDF that would be used to repay older loans from UDF rather than advance the development of the project. *See id.*

The court also rejects Mr. Moayedi's contention that Megatel has failed to allege fraud with sufficient particularity. Overall, the court concludes that Megatel alleges with adequate specificity the false representations that Mr. Moayedi allegedly made or caused a Centurion-affiliated entity to make; the approximate dates the representations were made; the contracts in which the alleged representations were made; and the fraudulent purpose for which the representations were allegedly made. *See generally* First Am. Comp. ¶¶ 38a.-mm.

The court, therefore, **denies** Mr. Moayedi's motion to dismiss to the extent he contends that Megatel fails to adequately allege claims for common law and statutory fraud.

### d.  The Economic Loss Rule

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Southwest Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493,

494-95 (Tex. 1991)). "Tort damages *are* recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (emphasis added).

In *Megatel II*, the court concluded that Megatel's claims for damages based on fraudulent inducement "would not be ordinarily barred under the economic loss rule; however, Megatel has failed to adequately plead their common law fraud claim, as previously discussed. Therefore, the economic loss rule bars such recovery *unless this deficiency is cured*." *Megatel II*, 2021 WL 5325919, at *10 (emphasis added). Because the court has determined that Megatel has cured the pleading deficiencies noted by the court in *Megatel II*, the economic loss rule does not bar its common law and statutory fraud claims.

In addition, the court rejects Mr. Moayedi's contention that the economic loss rule bars those claims that allege fraud that took place after the contract was formed. *See* Mr. Moayedi's Mot. to Dismiss 23, Doc. 49. The allegations to which he refers do not appear to be independent claims but rather additional details provided by Megatel concerning how Mr. Moayedi allegedly perpetrated the fraudulent scheme. Moreover, as Megatel correctly points out in its response, "the allegations relating to fraudulent misrepresentations that Moayedi made, or caused a Centurion affiliated entity to make, after Megatel had entered into a contract[,] do not somehow negate the fraud that induced Megatel to enter into the contract in the first place." Megatel's Resp. to Mr. Moayedi's Mot. 22.

The court, therefore, **denies** Mr. Moayedi's motion to dismiss to the extent he contends that Megatel's common law and statutory fraud claims are barred by the economic loss rule.

**Memorandum Opinion and Order - Page 27**

IV.     **Conclusion**

    For the reasons herein stated, the court **denies** the UDF Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 47), and **denies** Defendant Mehrdad Moayedi's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 49). **The court and its staff have expended numerous hours and scarce judicial resources in ruling on Rule 12(b)(6) motions. The court directs all Defendants not to file any further Rule 12(b)(6) motions.**

    **It is so ordered** this 27th day of June, 2022.

                                              Sam A. Lindsay
                                              United States District Judge

**Memorandum Opinion and Order - Page 28**