IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEGATEL HOMES, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 3:20-cv-00688-L-BT |
| | § | |
| MEHRDAD MOAYEDI, et al., | § | |
| | § | |
| Defendants. | § | |

**OMNIBUS DISCOVERY ORDER**

Pursuant to 28 U.S.C. § 636(b) and a Standing Order of Reference, United States District Judge Sam A. Lindsay has referred all discovery matters in this matter to the undersigned. *See* ECF Nos. 150, 167, 175, 253. The parties have filed numerous discovery-related motions and various non-parties have filed objections, as well as motions to quash and motions for protective orders. After careful consideration of the arguments and the applicable law, for the reasons stated herein, the Court:

1. GRANTS in part and DENIES in part UDF's Motion to Compel Megatel to Produce Financial Documents (ECF No. 147), as supplemented (*see* ECF No. 214);

2. DENIES Defendant Mehrdad Moayedi's Motion to Compel Third Parties Trez Capital Funding, LLC's and Trez Capital Funding II, LLC's Compliance with Subpoenas for Document Production (ECF No. 212).

3. GRANTS UDF's Motion to Compel Complete Interrogatory Responses from Plaintiffs (ECF No. 197);

4.  GRANTS in part and DENIES in part Plaintiff's Motion to Compel Key Liability Documents from UDF Defendants (ECF No. 200);

5.  GRANTS in part and DENIES in part Megatel's Motion to Compel Key Liability Documents from Mehrdad Moayedi (ECF No. 202);

6.  DENIES as moot Plaintiff's Motion to Quash Non-Party Subpoenas or, in the Alternative, Motion for Protective Order (ECF No. 178);

7.  DENIES as moot Plaintiff's Omnibus Motion to Quash Non-Party Subpoenas (ECF No. 181);

8.  GRANTS Non-Party Scarborough Lane Development, Inc.'s Motion to Quash and DENIES as moot its Motion for Protective Order (ECF No. 171);

9.  GRANTS in part and DENIES in part Plaintiff Megatel Homes III, LLC's Combined Motion to Compel Discovery from Non-Parties D.R. Horton, Inc., Crescent Estates Custom Homes, LP, Peloton Land Solutions, Inc., and Riveron Consulting, LLC (ECF No. 204); and

10. GRANTS in part and DENIES in part Plaintiff Megatel Homes III, LLC's Combined Motion to Compel Discovery from Non-Parties First Texas Homes, Inc., Mattamy Homes Title Agency, LLC, and Silver Star Title, LLC (ECF No. 206).

## Background

While the parties are familiar with the factual and procedural history of this litigation, the Court recounts the following background facts to provide context for its rulings:

This case arises out of an alleged scheme to defraud a Texas homebuilding company comprised of Megatel Homes, LLC (MHI or Megatel I), Megatel Homes II, LLC (MHII or Megatel II), and Megatel Homes III, LLC (MHIII or Megatel III) (sometimes collectively, "Megatel" or "Plaintiffs"). On March 20, 2020, Megatel filed its Original Complaint against Defendant Mehrdad Moayedi, founder and

operator of Centurion American Custom Homes d/b/a Centurion American Development Group (collectively, "Centurion")—a real estate development company. Megatel also sued the UDF Defendants—various entities comprising a family of investment funds that finance land development projects, as well as the founders and employees of those entities.[1]

In the Amended Complaint (ECF No. 37), the live pleading, Megatel alleges the following facts:

Between 2003 and 2011, Megatel perceived that it had a lucrative and successful business relationship with Moayedi and the UDF Defendants. Am. Compl. ¶ 5. The UDF Defendants' "business model was straightforward—a UDF fund would raise capital from investors and low-interest bank loans and then lend that capital to land developers and homebuilders at interest rates that exceeded the UDF funds' cost of capital." *Id.* ¶ 2. The UDF Defendants' largest borrower was Centurion. *Id.* ¶ 3. By 2009, Megatel had established itself "as one of the premier homebuilders in the State of Texas, and Centurion frequently contracted with [it] to serve as a primary builder on land development projects predominately financed by UDF." *Id.* ¶ 4.

---

[1] For purposes of this Order, "UDF Defendants" refer to Defendants United Development Funding, L.P.; United Development Funding II, L.P.; United Development Funding III, L.P.; United Development Funding IV; United Development Funding Income Fund V; UMT Services, Inc.; UMT Holdings, L.P.; Hollis Greenlaw; Theodore F. Etter; Benjamin Wissink; and Brandon Jester. The Court sometimes refers to the entity Defendants as the "UDF Entities."

In 2011, however, Defendants "bec[ame] cash starved as a result of the Great Recession." *Id.* ¶ 5. To "keep themselves afloat," Moayedi and the UDF Defendants targeted Megatel by entering into more real estate contracts for the earnest money; terminating old contracts with Megatel based on "back dated and forged documents"; and "loot[ing] public funding from projects in which Megatel participated and divert[ing] the funding to other projects and loan repayments." *Id.* ¶ 6. Moayedi allegedly caused entities he owned and controlled to sell hundreds of residential lots—lots that Megatel was contractually entitled to purchase—to other homebuilders. *Id.* ¶¶ 37-38.

"For its part, UDF began operating as a Ponzi-like scheme, using freshly-raised capital in newer funds to pay investors in older funds." *Id.* ¶ 7. "Moayedi and UDF had independent incentives to prop each other up and to facilitate their separate schemes." *Id.* ¶ 9. "[T]hey did so, in part, by conspiring to defraud Megatel, which stood at the intersection of the two frauds." *Id.* "Together, Defendants syphoned hundreds of millions of dollars off loans[,] intended for the development of projects for which Megatel had contracted[,] for their own personal enrichment." *Id.* ¶ 9.

Various court rulings trimmed the claims in this action. At present, the remaining claims are Megatel's claims against Moayedi for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. §§ 1962(a)-(c), and a RICO conspiracy claim against Moayedi and the UDF Defendants under 18 U.S.C. § 1962(d) (based on the predicate acts of mail fraud,

wire fraud, and interstate transportation of stolen property); and claims against Moayedi for common law fraud, fraudulent inducement, and statutory fraud.[2]

In February 2024, after the matter had been pending approximately four years, Megatel notified counsel for Defendants and the Court that Megatel intended to dismiss Megatel I and Megatel II from this action, leaving Megatel III as the sole Plaintiff. Ultimately, Megatel filed a motion to dismiss Megatel I and Megatel II without prejudice, contending that they "streamlined their theory of the case and presentation of evidence." Pls.' Mot. to Dismiss 1, ECF No. 176.[3] Specifically, Megatel stated it "intend[ed] to limit its monetary damages claims to a lost profit damages model to the following Predicate Act Developments: (1) Shahan Prairie; (2) Prairie Commons; (3) Northlake Estates; (4) Verandah; (5) Mercer Crossing – Kensington; (6) Riverwalk; and (7) Little Elm/Villages of Creekwood." *Id.* at 2. Megatel also asserted that it intended to "limit[ ] its theory of liability to those Predicate Act Developments for which Megatel III seeks damages, as well as the following Predicate Act Developments: (1) Erwin Farms;

---

[2] *See Megatel Homes, LLC v. Moayedi, et al.*, 2021 WL 5360509 (N.D. Tex. Nov. 16, 2021); *Megatel Homes, LLC v. Moayedi, et al.*, 2021 WL 5325919 (N.D. Tex. Nov. 16, 2021); and *Megatel Homes, LLC v. Moayedi, et al.*, 2022 WL 2306949 (N.D. Tex. June 27, 2022).

[3] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

(2) Creeks of Legacy; (3) Oak Hill Ranch; (4) Kensington Gardens; and (5) Preston Hill." *Id*.[4]

According to Megatel, "[e]ach Predicate Act Development involved Megatel III, as opposed to Megatel [I] or Megatel II. As a result, Plaintiffs determined it made sense—given the posture of the case—for Megatel [I] and Megatel II to be dismissed from this case." *Id.*

Moayedi and the UDF Defendants opposed the motion contending, among other things, that Megatel was "attempting to weaponize voluntary dismissal under Rule 41 to avoid necessary discovery into its finances and its damages theory[ ]" and that, in any event, Megatel's new damages theory "relie[d] on aggregate data from Megatel I, II, and other homebuilding affiliates." UDF Defs.' Resp. Br. 3, ECF No. 208. They argued that Megatel should not be permitted to shield discovery into Megatel I's and Megatel II's financial performance by nonsuiting those entities, while continuing to seek damages based on that same performance by those entities." *Id*. at 4.

On March 21, 2024, the District Judge granted Megatel's motion to dismiss, but dismissed Megatel I and Megatel II with prejudice. *See* March 21, 2024 Dismissal Order 9, ECF No. 257. The District Judge limited "Megatel III's monetary damages claims to a 'lost profit damages' model" based on the following

---

[4] The term "Predicate Act Developments" refers to certain Megatel developments related to the predicate acts specifically enumerated in the First Amended Complaint and Responses to UDF Defendants' Interrogatories.

Predicate Act Developments: (1) Shahan Prairie; (2) Prairie Commons; (3) Northlake Estates; (4) Verandah; (5) Mercer Crossing – Kensington; (6) Riverwalk; and (7) Little Elm/Villages of Creekwood. *Id.* at 10. Further, the District Judge limited Megatel III's theory of liability to the above-mentioned Predicate Act Developments and (1) Erwin Farms; (2) Creeks of Legacy; (3) Oak Hill Ranch; (4) Kensington Gardens; and (5) Preston Hill. *Id.*

In the order, the District Judge stated that "[a]lthough the court is not psychic, it reasonably believes—based on the history of these parties, the timing of the dismissal, and the court's decades worth of experience managing civil actions— that Plaintiffs' decision to dismiss is not as innocent as their Motion and Reply imply." *Id.* at 9. Although he declined Moayedi's "broad" request that Megatel be required to fulfill outstanding discovery prior to dismissal of Megatel I and Megatel II, as a condition of dismissal, the District Judge

> order[ed] Megatel I and Megatel II to comply with all discovery orders issued by [the Magistrate Judge], unless . . . modified by the [Court]. The parties, however, must not only show that the discovery request was timely, but also that the discovery requested is still relevant in light of this order dismissing Megatel I and Megatel II and limiting the predicate acts.

*Id.* at 11.

## Legal Standards

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court.

> *Scope in General.* Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter

> that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"Under Rule 26(b)(1), . . . discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573 (N.D. Tex. 2018) (Horan, J.) (citation omitted) (cleaned up). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Id.* (citation omitted). Relevance is interpreted broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 352 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). The party opposing discovery bears the burden of showing why the discovery sought is not relevant or is otherwise objectionable. *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 224 (N.D. Tex. 2016).

A court "must limit the frequency or extent of discovery otherwise allowed" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(b)(1) applies to nonprivileged matter, and a party withholding discovery on privilege grounds, "'must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 161 (N.D. Tex. 2018) (quoting Fed. R. Civ. P. 26(b)(5)(A)).

As to requests for production or inspection, Federal Rule of Civil Procedure 34(a)(1) provides that a party may serve on any other party a request within the scope of Rule 26(b): "(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information . . . or (B) any designated tangible things." Fed. R. Civ. P. 34(a). In response to a Rule 34(a) request, "[f]or each item or category, the response must either state that inspection and related activities will be

permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B).

As to interrogatories, Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Generally, an interrogatory may relate to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Lopez*, 327 F.R.D. at 579 (citation omitted). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Finally, responses to interrogatories must be verified. Fed. R. Civ. P. 33(b)(5).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to file a motion to compel responses to interrogatories or production of documents after having made a good-faith effort to resolve the dispute by conferring first with the other party. Fed. R. Civ. P. 37(a). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Federal Rule of Civil Procedure 45 "explicitly contemplates the use of subpoenas in relation to non-parties" and governs subpoenas served on third-

parties. *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009). Federal Rule of Civil Procedure 34 governs requests for production of documents and electronically stored information (ESI) from a party and explains that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c).

Under Rule 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A); *see also* Fed. R. Civ. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises . . . may be set out in a separate subpoena."). Rule 45(a)(1)(C) further provides that "[a] subpoena may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 45(a)(1)(C).

Rule 45(d)(2)(B) provides that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).

The party issuing the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(3)(A)(iv) requires that, on timely motion, the court must quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The movant has the burden of proof, *see id.*; *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (Fitzwater, J.)), and must meet "the heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'" *Williams,* 178 F.R.D. at 109.

"Whether a burdensome subpoena is reasonable must be determined according to the facts of the case." *MC Trilogy Texas, LLC v. City of Heath, Texas,* 2023 WL 7190652, at *3 (N.D. Tex. Nov. 1, 2023) (Fitzwater, J.) (cleaned up) (citation omitted). Among the factors that the court may consider in determining whether there is an undue burden are: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa,* 392 F.3d at 818 (citation omitted). The status of a witness as a non-party entitles the witness to consideration regarding expense and inconvenience. *See* Fed. R. Civ. P. 45(d)(2)(B). Undue burden can be found when a subpoena duces tecum is facially overbroad. *See, e.g., Wiwa,* 392 F.3d at 818.

Rule 26(c) provides, in pertinent part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). The burden is on the movant to show that good cause exists, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (cleaned up) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). The movant "must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017) (Horan, J.) (citations omitted).

## Analysis

1. The Court GRANTS in part and DENIES in part UDF's Motion to Compel Megatel to Produce Financial Documents (ECF No. 147), as supplemented (*see* ECF No. 214).

On January 30, 2024, the UDF Defendants filed a motion to compel Megatel to produce financial documents responsive to their Requests for Production of Documents (RFP) Nos. 10-14, 16-19, 68, and 70-76. Notably, the UDF Defendants filed this motion to compel before Judge Lindsay entered the March 21, 2024 Dismissal Order, *supra*, resulting in the dismissal with prejudice of Megatel I and Megatel II as Plaintiffs. As previously explained, however, as a condition of dismissal, Judge Lindsay ordered Megatel I and Megatel II to comply with all

discovery orders issued by the undersigned (unless overruled), if movant shows that "the discovery requested is still relevant in light of this order dismissing Megatel I and Megatel II and limiting the predicate acts." March 21, 2024 Dismissal Order 11.

### A. The Requests for Production

The UDF Defendants' First Set of RFPs to Megatel sought, for the time period between 2013 and present, monthly balance sheets (RFP No. 10); monthly P&L statements (RFP No. 11); tax returns (RFP No. No. 12); documents showing monthly liabilities (RFP No. 13); documents showing cash flows (RFP No. 14); documents showing lot takedowns and construction costs (RFP No. 16); cash or capital shortages (RFP No. 17); financial performance (RFP No. 18); and financing (RFP No. 19). App. in Support of UDF's Mot. to Compel Megatel to Produce Financial Documents (UDF's App.), Ex. A-2 (Pls.' Obj. and Resp. to UDF Defs.' First Set of Requests for Production of Documents), ECF No. 149 at 13-17.

In December 2022, Megatel responded to these RFPs and, other than the RFP for tax returns (RFP No. 12), and objections to the temporal scope of the requests (which Megatel argued should only extend to the date it filed its Original Complaint), it agreed to "undertake reasonable efforts to search for and produce non-privileged documents . . . , if any, responsive to" the requests. S*ee id.* Both parties agreed to table the request seeking Megatel's tax returns on the basis that Megatel would produce balance sheets and P&L statements. *Id.*, Ex. A-10 (e-mail from S. Henry to J. Tillotson), ECF No. 149 at 50.

The UDF Defendants served additional financial RFPs almost a year later. These RFPs targeted documents and communications relevant to Megatel's alleged failure to take down lots on time (RFP No. 68), its budgets and forecasts dated between January 1, 2012, and March 20, 2020 (RFP No. 70); documents and communications dated between January 1, 2012, and March 20, 2020, reflecting costs incurred (RFP No. 71); financial data provided to investors and lenders between January 1, 2012, and March 20, 2020 (RFP No. 72); construction and project reports between January 1, 2012, and March 20, 2020 (RFP No. 73); project timelines created between January 1, 2012, and March 20, 2020 (RFP No. 74); accounting data during the same period (RFP No. 75); and documents and communication related to decisions whether to take down lots or build homes dated between January 1, 2012, and March 20, 2020 (RFP No. 76). *Id.*, Ex. A-3 (Pls.' Am. Obj. and Resp. to UDF Defs.' Second Set of Requests for Production of Documents), ECF No. 149 at 20-27.

In response to RFP No. 68 (requesting documents and communications relevant to Megatel's alleged failure to take down lots on time), Plaintiffs objected to the extent the request sought documents protected by the attorney-client privilege and work-product doctrine and agreed to produce documents and communications "relating to Megatel's inability to take down lots as a result of the actions of Centurion, Moayedi, and the UDF Defendants." *Id.*, Ex. A-3, ECF No. 149 at 22. With respect to RFP Nos. 70-75, Plaintiffs objected to these requests as overbroad, unduly burdensome, and not proportional to the needs of the case, but

agreed to search for and produce the requested documents if they could be located after a reasonable search. *Id.*, Ex. A-3, ECF No. 149 at 23-26.

With respect to RFP No. 76, in addition to objecting to the request as overbroad, unduly burdensome, and not proportional to the needs of the case, Megatel stated it would "not search for or produce documents in response to this Request. However, Megatel is willing to meet and confer to narrow the scope of this request to documents relevant to the claims/defenses and discuss and consider such terms and custodians for any e-mail production." *Id.*, Ex. A-3, ECF No 149 at 26.

### B. The Parties' Contentions

In support of their motion to compel, the UDF Defendants contend that Megatel's production has been insufficient and that the requested documents "go to the heart of Megatel's alleged lost profit damages of more than $160 million for alleged harms that occurred over the past decade." UDF Defs.' Br. in Support of Mot. to Compel 6, ECF No. 148. The UDF Defendants maintain that "[h]aving put its financial picture in controversy, Megatel's financial records are relevant and necessary for UDF to test Megatel's damages theory and defend against Megatel's claims." *Id.* (cleaned up). In addition, the UDF Defendants argue that "[w]ithout, at the very least, monthly P&L statements (RFP 11), balance sheets (RFP 10), projected construction costs (RFP 16), and financial information provided to potential and actual lenders/investors (RFP 72), UDF's hands are tied behind its back in defending against the incredible amount of lost profits Megatel asserts."

*Id.* at 16 (citing *Lymphedema & Wound Care Consultants of Am., Inc. v. Health Care Serv. Corp.*, 2021 WL 842129, at *5 (N.D. Tex. Mar. 5, 2021)* (Horan, J.) (agreeing with the defendant's argument that "Plaintiffs clearly must provide information about the factual and legal basis for seeking millions of dollars [in damages] and produce supporting documents.")). Further, they assert that "documents responsive to UDF's financial requests are relevant to UDF's defenses to the alleged RICO violations even apart from damages." *Id.* at 17.

The UDF Defendants also urge that if Megatel is unwilling or unable to provide the responsive financial documents, it should be compelled to produce tax returns in response to RFP No. 12. *Id.* at 24 ("Megatel's failure to produce financial materials has rendered the production of its tax returns necessary and appropriate, and the time to produce those tax returns has conclusively arrived.").

Prior to responding to the UDF Defendants' motion, Megatel filed its notice with the Court indicating it was seeking dismissal without prejudice of MHI and MHII. One week later, on February 20, 2024, but prior to any Court ruling, Megatel filed its response brief announcing that "Megatel III is the only Plaintiff claiming monetary damages in this action." Pls.' Resp. Br. 6, ECF No. 164. In its response brief, Megatel argues that (1) "UDF's RFPs go far beyond Megatel III's claims or damages theory and, even, UDF's purported defenses"; (2) Megatel III has limited its monetary damages claim to a lost profit damages model based on eight "Predicate Act Developments"; (3) Megatel III has made "a reasonable, good faith effort to identify and produce documents responsive documents to UDF RFP

Nos. 68 and 70-76" and "UDF RFP Nos. 10, 11, 13, 14, and 16-19"; and (4) the financial documents the UDF Defendants seek via their motion to compel are "irrelevant and disproportionate to the needs of the case" and the "utility of the financial documents requested by UDF is outweighed by the burden to Megatel III." *Id.* at 4, 7-9, 14-16. Megatel III contends it has produced hundreds of pages of financial records, including "annual profit and loss statements for Megatel III, annual balance sheets for Megatel III, and the actual costs that Megatel III's affiliates incurred to build hundreds of homes throughout the Dallas-Fort Worth area." *Id.* at 4. According to Megatel III, it "repeatedly informed UDF that it simply does not create or keep many of the categories of documents it seeks, including projections, budgets, and pro formas broken down by development." *Id.*

With respect to its tax returns, Megatel admits that "Megatel III's overall profitability is relevant to the reasonableness of its claimed damages," but contends there is no compelling need for [its] tax returns, as Megatel III has produced its annual profit and loss statements and balance sheets." *Id.* at 16.

In their reply, filed while Megatel's motion to dismiss MHI and MHII was pending, the UDF Defendants assert that they seek "relevant, proportional, and important financial documents" from Megatel, but that "[i]nstead of substantively arguing against the merits of such discovery, Megatel attempts to avoid its obligations by moving to dismiss two of the three named plaintiffs—[MHI and MHII]." UDF Defs.' Reply Br. 2, ECF No. 185. The UDF Defendants also assert that

> dismissing MHI and MHII does not shield those entities' financial documents from disclosure because Megatel has put the financial information of all three entities directly at issue. Megatel's own damages expert relies on MHI's and MHII's alleged financial performance to opine that Megatel (MHI, MHII, and MHIII, collectively) is entitled to over $450 million in lost profits from losing the opportunity to build and sell homes on Centurion-developed lots due to the alleged racketeering scheme. Yet Megatel has only produced financial documents for MHIII, albeit insufficiently.

*Id.* The UDF Defendants contend that Megatel "cannot simultaneously shield MHI's and MHII's finances from production and use them as a sword for proof of damages." *Id.* at 5.

### C. Discussion

#### i.    *Megatel I and Megatel II*

As a threshold matter, the Court finds that the UDF Defendants have met their burden under the Court's March 21, 2024 Dismissal Order of showing that the financial information they seek to compel from Megatel I and Megatel II remains relevant and falls within the broad scope of discovery under Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1) (providing for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). First, a review of the parties' submissions shows that Megatel's lost profits damages theory is not based specifically on the past financial performance of MHIII, but rather the financial performance of a conglomeration of Megatel affiliates, including MHI and MHII. Megatel's damages expert, Robert G. Manz, does not provide an apportionment of damages between or among the three entities and, throughout his report assessing damages for Plaintiffs collectively,

Manz relies on aggregated data related either to the Megatel Group as a whole, MHI individually, or other Megatel affiliates. *See* App. to UDF Defs.' Reply Br., Ex. A-1 (Non-Megatel Homes III, LLC Data used by Robert Manz), ECF No. 186 at 7-8; *id.*, Ex. A-2 (Expert Report of Robert G. Manz), ECF No. 187-1 at 1-15 (filed under seal).

Further, there is evidence in the record suggesting that Megatel III does not have any employees and has never built a home because it is "a land purchasing entity which assigns title" to the properties to other Megatel affiliates or entities, which do build and sell homes. *Id.*, Ex. A-5 (Feb. 9, 2024 Ipour Dep. Tr. 212-13), ECF No. 186 at 24-25. Thus, Manz's citation to one publication (Builder Magazine) to establish that "Megatel" had approximately $252 million in revenue in 2021, which amount he then applies to calculate the weighted average cost of capital for Megatel—a key component to his damages calculation—could pertain to other Megatel homebuilding entities and not specifically to MHIII. *See id.*, Ex. A-2 (Expert Report of Robert G. Manz), ECF No. 187-1 at 14-15 (filed under seal).

In addition, the Court finds that the documents and communications the UDF Defendants seek to compel have relevance to the claims asserted against the UDF Defendants in the Amended Complaint and are important to (i) resolving the expansive claims of fraud and RICO conspiracy, and (ii) allowing the UDF Defendants to marshal a defense. *See* Fed. R. Civ. P. 26(b)(1) (permitting "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Having put "its financial picture in controversy," Megatel's financial

records are relevant and necessary for the UDF Defendants to test Megatel's damages theory and defend against Megatel's claims. *See HomeVestors of Am., Inc. v. LeGate*, 2013 WL 3348948, at *4 (N.D. Tex. July 3, 2013) (Stickney, J.) (holding that when a party seeks lost profits and sales, it puts "its financial picture in controversy, as it bears directly on the issue of damages," and finding that plaintiffs must produce financial documents when damages theory is lost profits, observing "[t]he Court will not allow HBN to make a claim for lost profits while refusing to produce information to support such an assertion."); *Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*, 2018 WL 2317696, at *18 (N.D. Tex. May 22, 2018) (Frost, J.) ("Discovery about recoverable damages . . . is undoubtedly relevant and thus discoverable so long as the requested discovery is proportional.")

On this record, the Court concludes it would be inequitable for Megatel III to assert it can recover all of the damages calculated in Manz's expert report without needing to produce the necessary documents for MHI and MHII so that the UDF Defendants are able to evaluate the basis for Manz's expert opinions.

The Court further agrees with the UDF Defendants that "[b]ecause Megatel failed to respond to UDF's arguments for compelling MHI and MHII to produce responsive financial documents based on the incorrect assumption that those entities are no longer parties to this case, MHI and MHII waived their objections." UDF Defs.' Reply Br. 6.

"A party to an action remains a party until it is properly dismissed pursuant to Federal Rule of Civil Procedure 41." *Emiii Holdings, LLC v. First NBC Bank*, 2021 WL 291307, at *6 (E.D. La. Jan. 28, 2021). MHI and MHII were parties to this matter until the Court granted Megatel's motion to dismiss on March 21, 2024. MHI and MHII, however, opted not to substantively address any of the arguments in the UDF Defendants' Motion to Compel even though "a party's obligation to respond diligently to its adversary's arguments continues until it is properly dismissed." *Id.* Megatel's response states that MHI and MHII "join in the arguments of Megatel Homes III, LLC," and proceeds to respond with arguments specific to MHIII only. *See* Megatel's Resp. Br. 4 at note 1.[5] Megatel's failure to substantively address the arguments in UDF's Motion to Compel on behalf of MHI and MHII amounts to waiver. *See Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) (Horan, J.) ("[A] party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection."). The Court agrees with the UDF Defendants that MHI's and MHII's assertion in a footnote that they join in MHIII's arguments "does nothing to advance the specific objections of MHI and MHII, especially where Megatel's arguments in its

---

[5] *See, e.g.*, Megatel's Resp. Br. 14 ("In sum, Megatel III has produced relevant, responsive documents . . ."); *id.* at 10 ("Megatel III has provided UDF with all the necessary financial documents to assess the veracity of Megatel III's lost profits damages model . . ."); *id.* at 8 ("Megatel III continued to reiterate that it did not regularly create the documents UDF requested.").

Response are specifically tailored to MHIII and not MHI or MHII." UDF Defs.' Reply Br. 7. As a result, the Court finds that MHI and MHII have waived any objections to the document production requests.

Although it is difficult to set a temporal limitation for discovery given Megatel's expansive allegations in the Amended Complaint, the Court finds it appropriate and proportional to the needs of the case to limit the temporal scope of responsive documents from MHI and MHII to 2012 through 2022.[6] Even if marginally relevant, the Court concludes that requests for the time period after 2022 are not proportional to the needs of the case given the claims and defenses. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401, 402, 403.

The Court declines to order production of tax returns from MHI and MHII, however, because there has been no showing of a compelling need for them. *See, e.g., Gondola v. USMD PPM, LLC,* 223 F. Supp. 3d 575, 588 (N.D. Tex. 2016) (Horan, J.) (quoting *Williams v. United States Environmental Servs., LLC,* 2016 WL 684607, at *2 (M.D. La. Feb. 18, 2016) ("Tax returns are highly sensitive documents and the court will only compel their production where the requesting party demonstrates both: (1) that the tax information is relevant to the subject

---

[6] The Court notes that, with respect to RFP Nos. 10-11, 13-14, and 16-19, the UDF Defendants sought documents from 2013 to present, and with respect to RFP Nos. 68 and 70-76, they sought documents from 2012 to March 20, 2020, the date Megatel filed this suit. *See* UDF's App., Ex. A-2 (Pls.' Obj. and Resp. to UDF Defs.' First Set of Requests for Production of Documents), ECF No. 149 at 13-17; *id.,* Ex. A-3 (Pls.' Am. Obj. and Resp. to UDF Defs.' Second Set of Requests for Production of Documents), ECF No. 149 at 20-27.

matter of the action; and (2) that there is a compelling need for the information because the information contained in the tax returns is not otherwise readily obtainable through alternative forms of discovery, such as depositions or sworn interrogatory answers.")) (cleaned up).

### ii.    *Megatel III*

Although the UDF Defendants move to compel financial documents from Megatel III, contending that its production is insufficient, the UDF Defendants acknowledge in their motion to compel that Megatel "produced four profit and loss statements and four balance sheets on January 23, 2024, and five profit and loss statements and five balance sheets on January 28, 2024, *[although] Megatel provided those documents for just [Megatel III]*." UDF Defs.' Br. in Support of Mot. to Compel 6 at note 5 (emphasis added). The UDF Defendants contend that Megatel "appears to have intentionally omitted line items that are customarily included in such reports in an effort to render them useless to UDF[,]" *see id.*, but they provide no support for this statement.

Zachary Ipour, co-founder and managing member of Megatel, has provided an affidavit in support of Megatel's response brief stating that "Megatel Homes III does not create or keep monthly profit and loss statements, balance sheets, cash-flow statements, or any other monthly financial performance document." App. in Support of Megatel's Opp'n to UDF's Mot. to Compel, Ex. A-2 (Ipour Aff. ¶ 7), ECF No. 165 at 12. Kathryn Yukevich, an attorney at Tillotson Johnson & Patton, has also provided in affidavit stating that, to date, Megatel III "has produced 55,206

individual documents, totaling 394,498 pages"; its "expert report included hundreds of pages of actual home-building cost data for homes built in the [DFW] area, including some built in Predicate Act Developments"; and "[d]uring the meet and confer process, including on December 6, 2023, and January 17, 2024, I informed counsel for UDF that Megatel does not generate or create a number of the documents sought by the UDF RFPs." *Id.*, Ex. A-1 (Yukevich Aff. ¶¶ 2-4), ECF No. 165 at 8. Megatel also provides a copy of its annual financials for 2014 through 2022 that is has produced in this matter. *See id.*, Ex. 7 (annual financial documents), ECF No. 166-1 (filed under seal).

In light of Megatel III's production to date, evidence submitted with its response brief (including the affidavits of Ipour and Yukevich), and the UDF Defendants' failure to adequately explain how further document production from Megatel III is relevant, *see* March 21, 2024 Dismissal Order 10-11, and not duplicative of the financial information sought from MHI and MHII, the Court denies the UDF Defendants' motion to compel further production of documents from Megatel III.

For these reasons, the Court **GRANTS in part** and **DENIES in part** the UDF Defendants' Motion to Compel. Specifically, the Court **GRANTS** the motion to compel Megatel I and Megatel II to respond to RFP Nos. 10-11, 13-14, 16-19, 68, and 70-76; **DENIES** the motion to compel Megatel I and Megatel II to respond to RFP No. 12 (seeking tax returns); and **DENIES** the motion to compel further responses from Megatel III. The Court **ORDERS** Megatel I and Megatel II to

25

produce, within 10 days of this Order, all non-privileged documents responsive to the UDF Defendants' RFP Nos. 10-11, 13-14, 16-19, 68, and 70-76 for the time period between 2012 and 2022.

2. The Court DENIES Defendant Mehrdad Moayedi's Motion to Compel Third Parties Trez Capital Funding, LLC's and Trez Capital Funding II, LLC's Compliance with Subpoenas for Document Production (ECF No. 212).

On February 21, 2024, Moayedi served notice of his intent to serve non-party subpoenas on Trez Capital Funding, LLC, and Trez Capital Funding II, LLC (collectively, "Trez"). *See* App. in Support of Moayedi's Mot. to Compel (Moayedi App.), Ex. 1 (Subpoenas and Requests for Production), ECF No. 213 at 14, 26.

The subpoenas served on Trez (the "Trez Capital Subpoenas") required compliance by February 29, 2024, just eight days after notification and one day before the discovery period closed. *See id.* The Trez Capital Subpoenas were "served on February 27, 2024." *See* Moayedi's Mot. to Compel 1. In the Trez Capital Subpoenas, Moayedi asks Trez to produce:

> RFP No. 1: All financial statements of Megatel, including but not limited to balance sheets and income statements submitted to [Trez] by Megatel for any reason.
>
> RFP No. 2: All applications for loans or lines of credit submitted to [Trez] by Megatel.
>
> RFP No. 3: All documents that refer to, reflect, or concern financial information related to Megatel.

Moayedi App., Ex. 1 (Subpoenas and Requests for Production), ECF No. 213 at 12, 24.

Trez filed objections, contending the requests: (1) are overly broad; (2) are not reasonably calculated to lead to the discovery of admissible evidence, irrelevant to the claims in this lawsuit and not proportional to the needs of the case; and (3) seek production of confidential, sensitive, and proprietary financial information of Megatel. *See id.*, Ex. 1 (Obj. and Resp. to Subpoenas and Requests for Production), ECF No. 213 at 3-5, 15-17.

Moayedi moves the Court to compel Trez to comply with the Trez Capital Subpoenas and to overrule Trez's objections. In support, Moayedi contends

> Megatel's allegations and damages theory implicate Megatel's finances. Moayedi and the UDF Defendants (collectively, "Defendants") propounded discovery requesting production of the Megatel Entities' financial documents for years during this case's pendency. In 2022, the Megatel Entities agreed to produce financial documents but failed to do so. In 2023, Defendants propounded additional discovery requesting production of the Megatel Entities' financial documents. Again, the Megatel Entities agreed to produce financial documents but failed to do so.
>
> ***
>
> In response to the Megatel Entities' discovery shenanigans, the UDF Defendants filed a motion to compel on January 30, 2024, ECF No. 147. Based on discussions between counsel, Moayedi believed that this issue would be resolved and the Megatel Entities would live up to their discovery obligations because the discovery period was set to close on March 1, 2024.
>
> On February 27, 2024, to avoid producing discovery and namely the financial documents of Megatel I and II, Megatel filed a motion to dismiss Megatel I and II from the case without prejudice. . . . In response to Megatel's discovery and dismissal gamesmanship, Moayedi subpoenaed Trez because Moayedi believes Trez has Megatel's financial documents supplied with loan applications in Trez's custody and control. *All Moayedi wants is the same discovery*

27

> *Megatel was obligated and refused to give—the finances of Megatel over the periods alleged in Megatel's First Amended Complaint.*

Moayedi Mot. to Compel 2-3 (emphasis added).

The Court has granted in large part the UDF Defendants' Motion to Compel to which Moayedi refers, filed approximately one month prior to Moayedi's Motion to Compel, and in which the UDF Defendants sought to compel the same financial documents Moayedi now seeks from non-party Trez. *See supra* Sec. 1.C. In light of this development, the Court finds that, although the documents sought have some relevance, Moayedi's Motion to Compel is unreasonably cumulative or duplicative and the documents he seeks to compel from non-party Trez can be obtained from a source that is more convenient, less burdensome, or less expensive (the UDF Defendants). *See* Fed. R. Civ. P. 26(b)(2)(C); *see also Wiwa*, 392 F.3d at 818. For this reason, the Court **DENIES** Moayedi's Motion to Compel and **OVERRULES as moot** Trez's objections.[7]

   3. The Court GRANTS UDF's Motion to Compel Complete Interrogatory Responses from Plaintiffs (ECF No. 197).

---

[7] Alternatively, the Court would quash the Trez Capital Subpoenas as procedurally improper because compliance by the discovery cutoff was not practical or possible. Rule 45 subpoenas, such as the Trez Capital Subpoenas at issue here, "constitute discovery and are subject to the same time constraints that apply to other methods of formal discovery, including the deadlines established by a court's scheduling order." *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, 2018 WL 10391736, at *1 (N.D. Tex. Dec. 17, 2018). Here, the Court's Amended Scheduling Order requires all discovery to be completed by March 1, 2024. *See* ECF No. 127 ¶ 5. The Amended Scheduling Order makes clear that "[c]ompletion of discovery means that the discovery must be sent or done so that the answers or responses are produced on or before" March 1, 2024. *Id.* The Trez Capital Subpoenas were not served until February 27, 2024, making compliance within the discovery period impractical.

On January 24, 2024, the UDF Defendants served special interrogatories to Megatel III, individually. *See* App. in Support of UDF Defs.' Mot. to Compel Complete Interrog. Resp., Ex. A-1 (UDF's First Set of Special Interrogs. to Megatel Homes III, LLC (Nos. 1-3)), ECF No. 199 at 8-12. The first special interrogatory asks MHIII to "[s]tate Your average profit margin on the sale of a home for each year from 2014 to present." *Id.*, Ex. A-1 (Special Interrog. No. 1), ECF No. 199 at 10. In response, Megatel III objected that Special Interrogatory No. 1 is "vague and overly broad as to the terms 'average' and 'profit margin'" and answered, subject to its objections, that it "generally expects average profit margin per home to be between 15% and 30%." *Id.*, Ex. A-4 (Obj. and Resp. to UDF's Special Interrog. No. 1), ECF No. 199 at 26.

The second special interrogatory asks MHIII to "[s]tate the number of new homes that You began building each year from 2014 to present." *Id.*, Ex. A-1 (Special Interrog. No. 2), ECF No. 199 at 11. In response, Megatel III objected that this interrogatory was "vague and overly broad as to the terms 'began' and 'building'" and, subject to its objections, provided "the approximate number of homes under construction and managed by Megatel affiliates from 2017 to 2023." *Id.*, Ex. A-4 (Obj. and Resp. to UDF's Special Interrog. No. 2), ECF No. 199 at 27.

In support of their Motion to Compel, the UDF Defendants contend that Megatel III has failed to "comply with [its] obligations under Rule 33(b)(3)" to answer Special Interrogatories Nos. 1 and 2. UDF Defs.' Mem. of Law in Support

of Mot. to Compel Interrog. Resp. 4, ECF No. 198.[8] They argue that Megatel III's boilerplate objections should be overruled and that Special Interrogatories Nos. 1 and 2 seek relevant and discoverable information pertaining to the damages Megatel III seeks. *Id.* at 9-12. According to the UDF Defendants:

> In its expert reports, Megatel calculates lost profits by estimating lost revenues from "lost lots" (i.e., the lots Megatel contends it could have purchased, built homes on, and sold absent the purported fraud), less various avoided costs, including the cost of constructing the hypothetical homes. As applied to MHIII, this requires MHIII to estimate when it would have taken down lots, how long it would have taken to build homes, how much it would have cost MHIII to borrow funds to finance the construction, how much that construction would cost, how quickly MHIII could have sold the homes (or "sell" the homes, as most of the hypothetical sales are post-2024), and the sale price of the hypothetical homes. And the damages theory assumes various incremental profit margins associated with each development.

*Id.* at 9-10. Thus, the UDF Defendants contend, to enable them to test that theory, they served Special Interrogatory No. 1 to obtain MHIII's actual profit margins on new home constructions. The UDF Defendants assert that in providing "generally expected" profit margins—as opposed to actual data—MHIII failed to respond to the specific query. *Id.* at 10.

Special Interrogatory No. 2 asks MHIII to: "[s]tate the number of new homes that You began building each year from 2014 to present." The UDF Defendants

---

[8] The UDF Defendants also moved to compel responses to Master Interrogatories 2 and 3. Based on the briefing, however, the Court concludes the parties have resolved this issue. *See* Megatel III's Resp. in Opp'n to Mot. to Compel 2 at note 4, 7, ECF No. 261; UDF Defs.' Reply Br. 8, ECF No. 293 (requesting that the Court compel responses solely with respect to Special Interrogatories Nos. 1 and 2).

contend that MHIII dodged the question by providing something UDF did not request—the "approximate number of homes under construction and managed by Megatel's affiliates from 2017 to 2023." *Id.* at 11. The UDF Defendants assert they did not ask about affiliates; they asked specifically about MHIII. *Id.*

On March 29, 2024, MHIII filed supplemental responses to Special Interrogatories Nos. 1 and 2. *See* App. in Supp. of Opp'n to UDF Defs.' Mot. to Compel, Ex. A-1 (Pl.'s First Am. Obj. and Resp. to UDF Defs.' First Set of Special Interrogs. to Megatel Homes III (Nos. 1-2)), ECF No 262 at 7-12. The amended response to Special Interrogatory No. 1 eliminated what MHIII "generally expects" for average profit margins and added that "Megatel built and sold homes through affiliates, most commonly single purpose entities." *Id.* at 9. The amended response for Special Interrogatory No. 2 eliminated the word "approximate" and instead provided the number of homes under construction and management for the years 2014 through 2023, as the interrogatory requested. *Id.* at 10.

In its response brief, MHIII argues these amended responses have "resolved the totality of [the UDF] Defendants' concerns." Pls.' Resp. in Opp'n to Mot. to Compel 2, ECF No. 261. MHIII explains that Megatel "operates as a group[,]" and although "Megatel III has not generally been the entity that constructs homes and instead builds homes through its affiliates, primarily single purpose entities or, in some cases, Megatel Homes[,]" this does not means that "Megatel III is incapable of using Megatel's overall resources to build and sell homes or that Megatel III is entirely without information regarding profit margins and capacity to start,

construct, and manage homes." *Id.* at 5 (citations omitted). MHIII also contends that "Megatel III's historical business practices do not render the information that Megatel III is able to provide irrelevant or irresponsive, particularly when UDF is continuing to compel documents related to these same questions from Megatel [I] and Megatel II." *Id.* at 6. MHIII further posits that "UDF's dissatisfaction with the content of Megatel III's Interrogatory responses does not mean that the responses themselves are deficient." *Id.* at 3.

In reply, the UDF Defendants contend that the amended responses, like the original responses, are evasive and deficient, because they do not provide answers for Megatel III, the actual party in this case, but for its affiliates. *See* UDF Defs.' Reply Br. 5-6, ECF No. 293.

A motion to compel a discovery response is appropriate when a party fails to answer an interrogatory submitted under Rule 33. Fed. R. Civ. P. 37(a)(3)(B)(iii). "[A]n evasive or incomplete answer is to be treated as a failure to answer." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977). "The applicable rule requires that if a party is a business entity, the interrogatories must be answered 'by any officer or agent, who must furnish the information available to the party.'" *Chilly Dil Consulting, Inc. v. JetPay ISO Servs., LLC*, 2015 WL 13469921, at *4 (N.D. Tex. Dec. 21, 2015) (Toliver, J.) (citing Fed. R. Civ. P. 33(b)(1)(B)). Additionally, "interrogatories must be answered *by the party to whom they are directed*." *Duncan v. Nunez*, 2019 WL 5539096, at *1 (W.D. La. Oct. 23, 2019) (emphasis added).

Upon review, and in light of Megatel III's damages model based on lost profits, the Court finds that the information the UDF Defendants seek to compel from Megatel III is relevant, falls within the broad scope of discovery under Rule 26(b)(1), and is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (providing for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). In addition, the Court agrees with the UDF Defendants that Megatel III's amended responses to Special Interrogatories Nos. 1 and 2 are evasive because MHIII answers on behalf of entities no longer in the case (MHI and MHII, as well as other Megatel affiliates), none of whom are targeted or specified by the interrogatories. *See* Duncan, 2019 WL 5539096, at *1 ("[I]nterrogatories must be answered by the party to whom they are directed."). Notably, Rule 33 does not allow responses from separate Megatel entities, because interrogatories may not be served on nonparties. *See* Fed. R. Civ. P. 33(a)(1) (permitting service only on another party); *see also* id., Rule 33(b)(1)(A) ("The interrogatories must be answered . . . by the party to whom they are directed"). The UDF Defendants never directed an interrogatory to MHIII's "affiliates"—they served interrogatories specifically on MHIII. Because MHIII's answers are evasive, the Court treats them as "a failure to answer." *Dollar*, 561 F.2d at 61. Furthermore, Megatel III's responses on behalf of other Megatel entities who are no longer parties to the case is incongruous with the arguments it made in support of its motion to dismiss Megatel I and Megatel II,

which the Court granted in March 2024. *See* Pls.' Mot. to Dismiss, *passim*, ECF No. 176.[9]

Finally, the Court **OVERRULES** Megatel III's objections that Special Interrogatories Nos. 1 and 2 are overly broad and vague. The Fifth Circuit rule is that "the party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome, or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (internal quotations omitted). Megatel III has not done this.

For these reasons, the Court **GRANTS** UDF's Motion to Compel Complete Interrogatory Responses from Plaintiffs and **ORDERS** Megatel III to provide, within 10 days of this Order, complete responses to the UDF Defendants' Special Interrogatories Nos. 1 and 2.

4. The Court GRANTS in part and DENIES in part Plaintiff's Motion to Compel Key Liability Documents from UDF Defendants (ECF No. 200).

Megatel III requests that the Court compel the UDF Defendants to produce the following categories of documents responsive to Megatel's First, Second, and

---

[9] For example, in Megatel's Motion to Dismiss MHI and MHII, which the Court granted, *see* March 21, 2024 Dismissal Order, Megatel emphasized the separation between MHIII and the other entities: "Each Predicate Act Development involved MHIII, as opposed to Megatel [I] or Megatel II." Mot. to Dismiss 2, ECF No. 176. Also, when the UDF Defendants moved to compel financial documents from all three entities—before the Court entered the Dismissal Order—Megatel's response restricted itself to "specifically address[ ] MHIII's document production." Pls.' Resp. Br. 4 n. 1, ECF No. 164.

Third Requests for Production (sometimes collectively, "Requests for Production"):

> • Relevant documents and communications previously identified, reviewed, and produced in related legal proceedings (RFP Nos. 171-184, 187-194);
>
> • Documents and communications related to Centurion's loans, repayment of loans, and wire transfers related to the Predicate Act Developments (RFP Nos. 3, 4, 8, 9, 10, 154, 155, 166, 169, 197, 198);
>
> • Documents and communications related to draw requests and distributions (RFP Nos. 7, 165, 167); and
>
> • Documents and communications related to representations made by Moayedi or Centurion about Predicate Act Developments and valuations of the Predicate Act Developments (RFP Nos. 15, 17, 27, 42, 93, 125, 136, 143, 150, 160, 196, 199, 202, 205-207).

Pl.'s Mot. to Compel 8.

In support of its Motion to Compel, Megatel III asserts there are "a number of serious problems with the productions made in response to Megatel's requests." *Id.* at 14. As a threshold matter, Megatel III argues that the UDF Defendants have "unilaterally narrowed the definition of the Centurion Entities and the temporal scope of their production." *Id.* "As to the former, the UDF Defendants refused to produce any documents with Centurion Entities that were not directly a party to the contracts identified in Plaintiffs' First Amended Complaint. As to the latter, the UDF Defendants arbitrarily refused to produce documents before February 28, 2014, or after March 20, 2020." *Id.* at 14-15. Megatel III also takes issue with the UDF Defendants' position that "discovery in this case is limited only to the Predicate Act Developments outlined in Megatel's First Amended Complaint and—

in some instances—only to the specific predicate acts of mail fraud and wire fraud alleged in Plaintiffs' First Amended Complaint." *Id.* at 7-8 (footnote and citations omitted). Megatel III contends that the UDF Defendants' unilateral attempt to narrow discovery is a "significant problem[ ] as the nature of the UDF Defendants' and Moayedi's operations involved a shell game of using a legion of entities to transfer funds without record or accountability for more than a decade, a period far exceeding the UDF Defendants' self-declared relevancy or temporal limits." *Id.* at 15.

> In response, the UDF Defendants argue:

> [that] Megatel moves on discovery requests for which UDF has already satisfied its discovery obligations—having produced all non-privileged, responsive, relevant documents located after a reasonably diligent search. Indeed, after collecting from more than a dozen custodians, UDF produced virtually every document that even referenced the real estate developments identified in Megatel's Complaint or the corresponding UDF/Centurion loan numbers, even if those documents said nothing about the actual predicate act allegations (acts of mail or wire fraud, or interstate transportation of stolen goods) that underly Megatel's claims. The discovery theory advanced by Megatel in its Motion is untenable: Megatel does not get carte blanche discovery of every document UDF possesses that merely references "Moayedi" or "Centurion" just because Megatel alleges a conspiracy between the Defendants. And while Megatel baldly asserts that it "knows responsive documents exist that have not been produced because UDF has already produced them in the criminal case and other litigation," Megatel has never identified such documents to UDF and even fails to do so in its Motion.

UDF Defs.' Opp'n to Pl.'s Mot. to Compel 6-7, ECF No. 264.

### A. The UDF Defendants' General Objections

To resolve this particular discovery dispute, the Court must first address certain of the UDF Defendants' "General Objections," which the UDF Defendants also incorporate by reference into each of their specific objections. *See* App. in Support of Pl.'s Mot. to Compel, Ex. A-1 (UDF Defs.' Resp. and Obj. to Megatel's Second Set of Requests for Production, General Obj.), ECF No. 201 at 7-9; *id.*, Ex. A-2 (UDF Defs.' Resp. and Obj. to Megatel's Third Set of Requests for Production, General Obj.), ECF No. 201 at 24-27; *id.*, Ex. A-8 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, General Obj.), ECF No. 201 at 137-40.

After taking into consideration the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit, *see Lopez*, 327 F.R.D. at 584, the Court:

> ● **OVERRULES** the UDF Defendants' *General Objection No. 3* in their objections and responses to Megatel's Second and Third Set of Requests for Production (*General Objection No. 4* in their objections and responses to Megatel's First Set of Requests for Production). This objection seeks to limit Megatel's definition of "Centurion Entities," contending that Megatel's definition is overly broad, unduly burdensome, and not proportional to the case insofar as it includes entities that were not parties to the transactions at issue in the case.[10]

---

[10] In their General Objections, the UDF Defendants seek to define "Centurion Entities" in their responses as limited to Centurion American Homes, Shahan Prairie, L.P., CADG Riverwalk, CADG Prosper Lakes North, CTMGT Frisco 113, CTMGT Frontier 80, CADG Dallas 163, CADG Mercer MM Holdings, and MM Mercer Kensington, One Verandah, LP. *See* App. in Support of Pl.'s Mot. to

Given Megatel III's theory of the case, expansive allegations of a RICO conspiracy between Moayedi and the UDF Defendants, and allegations that the UDF Defendants' and Moayedi's operations involved a shell game of using a legion of entities to transfer funds without record or accountability for more than a decade, *see* Am. Compl., *passim*, Megatel III's requests for documents exchanged between specific Centurion Entities run by Moayedi and the UDF Defendants from the inception of the alleged conspiracy are relevant and proportional to the needs of the case and the UDF Defendants have not demonstrated any undue burden.

● **OVERRULES** the UDF Defendants' *General Objection No. 6* in their objections and responses to Megatel's Second and Third Set of Requests for Production. This objection asserts that Megatel's definition of "Predicate Act Development" is overly broad, unduly burdensome, and not proportional to the needs of this case to the extent it requests information about any development not referred to in Plaintiff's First Amended Complaint and seeks to limit the definition of "Predicate Act Developments" to the developments referred to in Paragraph 38 of Plaintiff's First Amended Complaint. This objection, however, ignores both the applicable discovery standard under Rule 26(b)(1) and that the Court already permitted Megatel III to "streamline [its] civil action" to the Predicate Act Developments disclosed in Megatel's First Amended Complaint *and* Responses to the UDF Defendants' First Set of Interrogatories. *See* March 21, 2024 Dismissal Order 9-10. The Court nevertheless **SUSTAINS** this objection insofar as any Requests for Production that apply *exclusively* to Predicate Act Developments that Megatel has since stipulated would not be presented for liability or damages, as these requests would seek documents that are of limited relevance and are unduly burdensome and disproportionate to the needs of the case.

● **SUSTAINS** the UDF Defendants' *General Objection No. 10* in their objections and responses to Megatel's Second and Third Set of Requests for Production. This objection relates to Megatel's Requests for Production that seek documents designated Confidential by third parties (or otherwise designated Confidential by anyone on the basis that the documents contain confidential information that does not belong to the UDF Defendants) under the operative state-court protective order in the Hayman Case. On the record as it stands, it

_____

Compel, Ex. A-1 (UDF Defs.' Resp. and Obj. to Megatel's Second Set of Requests for Production, General Obj. No. 3), ECF No. 201 at 8.

appears that any relevance the requested documents have is outweighed by the third parties' interests in confidentiality.

● **SUSTAINS** the UDF Defendants' *General Objection No. 12* in their objections and responses to Megatel's Second and Third Set of Requests for Production (*General Objection No. 11* in their objections and responses to Megatel's First Set of Requests for Production). This objection asserts that Megatel's Requests for Production are overly broad and disproportionate given the lack of temporal limitations. The Court, however, **OVERRULES** the UDF Defendants' unilateral decision to limit responsive documents to those dated between February 28, 2014, and March 20, 2020. As stated previously, *see supra* Sec. 1.C, given Megatel's expansive fraud and RICO conspiracy allegations in the Amended Complaint, *see* Am. Compl., *passim*, it is appropriate and proportional to the needs of the case to limit the temporal scope of responsive documents to 2012 through 2022.

Having addressed the pertinent General Objections, the Court now turns to the remaining disputes related to specific requests for production, each of which incorporates by reference the General Objections addressed above.

### B. RFP Nos. 171-184, 187-194

These requests ask the UDF Defendants to produce documents and communications that were previously produced in other legal proceedings. A brief description of the other legal proceedings is required to understand the nature of the parties' dispute over these requests for production.

Beginning in November 2017, UDF was involved in litigation with Hayman Capital and its founder, hedge fund manager Kyle Bass, who several years earlier— concerned that UDF's operations were not consistent with its SEC filings and business practices—filed a whistleblower complaint with the Securities and Exchange Commission (SEC). In the Original Petition, the UDF Defendants alleged

that Bass, through his hedge fund, took significant "short" positions in UDF's stock in 2015 before launching a coordinated business disparagement campaign, whereby Bass made inflammatory allegations about UDF on multiple websites— including that UDF was not a legitimate real estate business but was a massive Ponzi scheme—to sink UDF's stock price so he could profit more than $60 million. *See United Development Funding, L.P. et al. v. J. Kyle Bass et al.*, Cause No. CC-17-06253-C in Dallas County Court at Law No. 3 (the "Hayman Case"). App. to Pl.'s Mot. to Compel, Ex. A-7 (Orig. Pet.), ECF No. 201 at 74-135.

In the Hayman Case, the UDF Defendants produced approximately 248,317 documents totaling approximately 1,902,725 pages, which were responsive to ten sets of requests for production totaling 1,237 requests covering 255 pages. *See* App. in Supp. of Def.'s Mot. to Quash Subpoena, Ex. B (Decl. of Ellen Cirangle ¶ 4), ECF No. 101 at 163. UDF's productions contained comprehensive information about its finances, relationships with its creditors and investors, government investigations alleged to have been prompted by Hayman's actions, approximately 50,000 emails between UDF and Whitley Penn (UDF's prior auditor), Grant Thornton (potential auditors), Eisner Amper (UDF's auditors subsequent to Whitley Penn), and Riveron (who assisted with UDF's financials), as well as e-mails referring to Hayman. *Id.* The UDF Defendants' business partners, including accountants and banks, also produced documents related to UDF's business model and finances, totaling more than 21,000 documents. *Id.* ¶ 5.

Further, and in part due to Hayman's whistleblower complaint, the UDF Defendants were the subject of regulatory and criminal investigations by the SEC and Department of Justice (DOJ). In July 2018, the SEC brought an action against the UDF Defendants for violating securities laws, which ultimately settled. *SEC v. UDF III et al.*, Civil Action No. 3:18-CV-01735-L (N.D. Tex.) (the "SEC Case"). In October 2021, four of UDF's executives were indicted for securities fraud and ultimately convicted. *United States v. Greenlaw et al.*, Case No. 4:21-CR-289-O (N.D. Tex.) (the "Criminal Case").

### i. *RFP Nos. 171-184 (Hayman Case)*

#### a. The Court issues a protective order prohibiting Megatel from seeking "cloned" discovery from the Hayman Case.

On December 12, 2022, Megatel served a subpoena duces tecum on Hayman Capital seeking the following broad categories of documents from the file in the Hayman Case: every document produced by any party or non-party without limitation; all documents and communications "related to" Megatel's claims in the case *sub judice*; and unredacted copies of all pleadings, motions, exhibits, and transcripts from depositions, hearings, and "other proceedings." *See* Return of Service of Subpoena, ECF No. 90.

The UDF Defendants (successfully) moved for a protective order, arguing that the subpoena sought prohibited "cloned discovery" and engaged in an impermissible "fishing expedition." *See* UDF Defs.' Mem. of Law in Supp. of Mot. to Quash 12, ECF No. 100. The undersigned granted the motion for a protective

order and found that the subpoena sought "cloned" or "piggy-back" discovery of documents subject to a state court confidentiality order and that, while such requests were "not *per se* improper," the requests at issue were "outside the scope of discovery." *See* Disc. Order 4, ECF No. 115. In so ruling, the Court recognized that Megatel was "not entitled to 'wholesale reproduction'" and must "serve specific discovery requests for relevant information on the UDF Defendants." *Id.* at 5. The Court set forth the applicable law as follows:

> Some courts permit piggy-back discovery when there is "significant factual and legal overlap" with a prior case and the request is not overbroad. *See, e.g., Whitman v. State Farm Life Ins.*, 2020 WL 5526684, at *3 (W.D. Wash. Sept. 15, 2020); *Peterson v. Wright Med. Tech., Inc.*, 2013 WL 655527, at *6 (C.D. Ill. Feb. 21, 2013). "But similarities or overlap alone are insufficient to justify a carte blanche production of all documents from the [previous] cases." *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2022 WL 17339035 (E.D. Pa. Nov. 30, 2022) (cleaned up). The movant must still "make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses." *King Cnty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011).

Disc. Order 4-5.

> **b.** *Following the undersigned's entry of a protective order prohibiting "cloned" discovery, Megatel serves RFP Nos. 171 through 184 on the UDF Defendants.*

Subsequently, Megatel served the UDF Defendants with RFP Nos. 171 through 184 seeking documents from the Hayman Case, to which the UDF Defendants responded. *See* App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-2 (UDF Defs.' Resp. and Obj. to Megatel's Second Set of Requests for Production), ECF No. 265 at 10-25.

With respect to RFP Nos. 171 through 184, the UDF Defendants objected to each as "overbroad, unduly burdensome, and not proportional to the needs of the case," and objected that each request was not specific enough to satisfy the Court's Discovery Order granting the UDF Defendants' motion for protective order. *See id.*

More specifically, as to RFP Nos. 172, 174, and 176 (which sought documents produced by third parties in the Hayman Case referring to Megatel, Moayedi, or relating to or referencing any loan made by any UDF Entity to any Centurion Entity in connection with any Predicate Act Development), and RFP No. 184 (which sought unredacted copies of Defendant's First Motion for Summary Judgment and all exhibits thereto in the Hayman Case), the UDF Defendants added the objection that the requests sought "documents produced by third parties and designated by those third parties as confidential under the Hayman Lawsuit protective order." *Id.*, Ex. A-2 (UDF Defs.' Resp. and Obj. to Megatel's Second Set of Requests for Production, Obj. to RFP Nos. 172, 174, 176, and 184), ECF No. 265 at 14, 16, 18, 23.

In addition to their objections, the UDF Defendants contend in response to Megatel III's Motion to Compel that "the new document requests [do] not comport with the Court's Protective Order." UDF Defs.' Opp'n to Pl.'s Mot. to Compel 14, They argue that "Megatel should not be permitted to relitigate the Protective Order under the guise of a belated motion to compel." *Id.* at 18. And, the UDF Defendants maintain that they have "already produced virtually every document that [they] produced in the Hayman Case that so much as references any of the predicate act

43

properties or associated loans. In doing so, [they] ha[ve] more than satisfied [their] discovery obligation." *Id.* at 18.

In reply, Megatel III contends that UDF has not produced all responsive documents produced in the Hayman Case and that it "has narrowed the scope of its subpoena to include only those documents relating to the claims and defenses in this action[,]" rendering "inapposite" the case law that the UDF Defendants cite as evidence that Megatel III is seeking "cloned discovery." Megatel III's Reply Br. 5, ECF No. 297. Megatel III further argues that, while there are distinctions between the Hayman Case and this case, "even a cursory reading of the pleadings" in both cases shows substantial overlap. *Id.* "Both cases involve the tangled financial relationship between UDF and Moayedi, UDF's business operations, and nine out of the twelve Predicate Act Developments directly at issue in this case." *Id.* at 5-6.

Here, given the broad definition of "relevance" under the federal rules and the substantial overlap between the Hayman Case and this case, the Court finds that the UDF Defendants have failed to meet their burden of showing that the materials from the Hayman Case are not relevant to this case.  Accordingly, the Court **OVERRULES** the UDF Defendants' relevance objections to RFP Nos. 171 through 184.

In addition, the Court rejects the UDF Defendants' contention that Megatel's RFPs 171 through 184 do not comport with the Court's prior Discovery Order granting the UDF Defendant's motion for protective order. Unlike with its prior

44

subpoena served on Hayman Capital, Megatel III is not making a request for a "wholesale reproduction from Hayman Capital of all documents and communications produced by any UDF Entity or any third party in the state-court action or unredacted copies of all pleadings, motions, exhibits, and transcripts of depositions, hearings, and other proceedings in the state-court action." Disc. Order 5 (citation omitted).[11]

The Court also **OVERRULES** the UDF Defendants' objection that production of documents responsive to RFP Nos. 171-184 would be unduly burdensome. As the undersigned noted in the Discovery Order granting the UDF Defendants' request for a protective order, "[t]he UDF Defendants represent that every document Plaintiffs seek is in their possession." Disc. Order 6 (citing Joint Report 11). As the materials have already been collected, reviewed, produced, and are in the UDF Defendants' possession, any burden appears less than undue.

---

[11] For example, RFP No. 171 seeks "[a]ll documents and communications produced by any UDF Entity or UDF Individual in the Hayman Lawsuit that refer to Megatel"; RFP No. 173 seeks "[a]ll documents and communications produced by any UDF Entity or UDF Individual in the Hayman Lawsuit that refer to Moayedi"; RFP No. 175 seeks "[a]ll documents and communications produced by any UDF Entity or UDF Individual in the Hayman Lawsuit that relate to or reference any loan made by any UDF Entity to any Centurion Entity in connection with any Predicate Act Development"; RFP No. 177 seeks "[a]ll cash roll forward financials for years 2010-2022 produced by any UDF Entity or UDF Individual in the Hayman Lawsuit"; and RFP No. 178 seeks "[a]ll general ledgers and financial statements for years 2010-2022 produced by any UDF Entity or UDF Individual in the Hayman Lawsuit." *See* App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-2 (UDF Defs.' Resp. and Obj. to Megatel's Second Set of Requests for Production, RFP Nos. 171, 173, 175, 177, 178), ECF No. 265 at 13, 15, 16, 18, 19.

The Court, however, **SUSTAINS** the UDF Defendants' objections to RFP Nos. 172, 174, 176, and 184, which seek documents produced by third parties and designated by those third parties as confidential under the state-court protective order in the Hayman Case. Any potential relevance the requested documents have is outweighed by the third parties' interests in confidentiality. The Court notes it has already sustained the UDF Defendants' General Objection No. 10 in their objections and responses to Megatel's Second and Third Set of Requests for Production, insofar as any requests seeking documents produced by third parties and designated by those third parties as confidential under the state-court protective order in the Hayman Case. *See supra* Sec. 4.A.

### ii. *RFP Nos. 187-194 (the Criminal & SEC Cases)*

The UDF Defendants also argue they "should not be compelled to produce cloned discovery from the Criminal Case and SEC action." UDF Defs.' Opp'n to Pl.'s Mot. to Compel 21. They argue that "those proceedings are distinguishable from this RICO case, rendering cloned discovery improper." *Id.* For the reasons that follow, the Court agrees.

With respect to the Criminal Case, Megatel previously acknowledged that overlap between the Criminal Case and this RICO lawsuit is not substantial. Specifically, after commencement of the Criminal Case, the UDF Defendants moved to stay this RICO action. In opposing that motion to stay, Megatel argued that "[t]he issues in this case and the criminal proceeding do not significantly overlap." Pl.'s Resp. in Opp'n to Def.'s Mot. to Stay 4, 6, ECF No. 45. Further, citing

a previous order by the Court regarding a separate motion, Megatel highlighted that "although 'Megatel does allege that UDF operated 'as a Ponzi-like scheme,' Megatel's RICO conspiracy claim against the UDF Defendants is not based on any alleged securities fraud perpetrated by the UDF Defendants." *Id.* at 7 (citing Mem. Op. and Order, ECF No. 36, at 8). Megatel also acknowledged that "the Government is not a party to this case and Megatel is not a party to the criminal proceeding." *Id.* at 8.

In light of Megatel's previous position, the Court is not persuaded that there is significant overlap between the Criminal Case and SEC Case, on the one hand, and this case, on the other hand, such as to render appropriate the discovery sought. Accordingly, the Court **SUSTAINS** the UDF Defendants' relevance objection to RFP Nos. 187-194.

In addition, the Court agrees with the UDF Defendants that many of Megatel's requests for documents from the Criminal Case are not tethered to the claims or defenses in this case. For example, RFP No. 186 seeks "[a]ll Government Exhibits marked or introduced in the UDF Criminal Matter, in their native format." App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-3 (UDF Defs.' Resp. and Obj. to Megatel's Third Set of Requests for Production, RFP No. 186), ECF No. 265 at 30. Certain of Megatel's requests related to the SEC Case are similar. For example, RFP No. 190 seeks "Copies of all correspondence between [UDF] and the SEC from January 2014 to the present[,]" and RFP No. 191 seeks "[c]opies of all correspondence between You and the DOJ from January 2014 to

the present." *Id.*, Ex. A-3 (UDF Defs.' Resp. and Obj. to Megatel's Third Set of Requests for Production, RFP Nos. 190, 191), ECF No. 265 at 32. This is prototypical cloned discovery. *See TravelPass Grp., LLC v. Caesars Ent. Corp.,* 2020 WL 698538, at *6 (E.D. Tex. Jan. 16, 2020) (defining "cloned discovery" to include "requesting all documents produced or received during other litigation or investigations") (citation omitted).

Accordingly, in addition to sustaining the UDF Defendants' objection based on relevance, the Court **SUSTAINS** the UDF Defendants' objection that RFP Nos. 187-194 are not in compliance with the parameters set forth in the Court's Discovery Order.

For these reasons, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 171, 173, 175, and 177-183, and **DENIES** Megatel III's Motion to Compel with respect to RFP Nos. 172, 174, 176, 184, and 187 through 194. The UDF Defendants' production of documents responsive to these requests must be consistent with the Court's rulings on the UDF Defendants' General Objections, *see supra* Sec. 4.A.

### C. RFP Nos. 3, 4, 8, 9, 10, 154, 155, 166, 169, 197, 198

These requests ask the UDF Defendants to produce documents and communications related to Centurion's loans, repayment of loans, and wire transfers related to the Predicate Act Developments. *See* App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-4 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, RFP Nos. 3, 4, 8, 9, 10, 154, 155,

166, 169), ECF No. 265 at 42-43, 45-49, 53; *id.*, Ex. A-3 (UDF Defs.' Resp. and Obj. to Megatel's Third Set of Requests for Production, RFP Nos. 197, 198), ECF No. 265 at 35.

In response, the UDF Defendants incorporate their General Objections, including that the requests are overbroad, unduly burdensome, and not proportional to the needs of this case, without any limitation as to time and without connection to the allegations in the complaint. *See id.*, Ex. A-4 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, Obj. to RFP Nos. RFP Nos. 3, 4, 8, 9, 10, 154, 155, 166, 169), ECF No. 265 at 42-43, 45-49, 53. *id.*, Ex. A-3 (UDF Defs.' Resp. and Obj. to Megatel's Third Set of Requests for Production, Obj. to RFP Nos. 197, 198), ECF No. 265 at 35.

The Court previously addressed the UDF Defendants' General Objections, *see supra* Sec. 4.A, which are incorporated herein by reference. The UDF Defendants' remaining objections to these Requests for Production, insofar as they are not resolved based on the Court's rulings on their General Objections, are **OVERRULED** as insufficient, given that minimal to no explanation for the objections is provided. *See Heller*, 303 F.R.D. at 490-92.

For these reasons, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 3, 4, 8, 9, 10, 154, 155, 166, 169, 197, 198. The UDF Defendants' production of documents in response to these requests must be consistent with the Court's rulings on the UDF Defendants' General Objections, *see supra* Sec. 4.A.

### D. RFP Nos. 7, 165, 167

RFP No. 7 asks for "[a]ll documents and communications that identify the relationship that each UDF Entity has with each UDF Individual." App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-4 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, RFP No. 7), ECF No. 265 at 45. In response, the UDF Defendants agreed to produce "organizational charts sufficient to show the corporate structure of the UDF Entities." *Id.*

In their opposition to Megatel III's Motion to Compel, the UDF Defendants assert that they have produced PowerPoint presentations with organizational structure of the various entities; schedule 14A filings that contained communications with shareholders, organizational structure charts, and ownership interest allocations; and other SEC filings with information about the UDF entities. *See* UDF Defs.' Opp'n to Pl.'s Mot. to Compel 25-26. In addition, the UDF Defendants provide the Court with the Bates-numbers pertaining to the documents produced. *See id.* at notes 74-76. In light of the UDF Defendants' production to date, the Court finds that no further response to RFP No. 7 is required.[12]

RFP No. 165 asks the UDF Defendants to produce "[a]ll documents and communications between You and Moayedi or any Centurion Entity regarding draw requests, including but not limited to both the submission and payment of

---

[12] It is unclear why Megatel III includes RFP No. 7 in this portion of its Motion to Compel, as it is unrelated to draw requests and timing of distributions, which Megatel III represents is the subject matter of RFP Nos. 7, 165 and 167. *See* Pl.'s Mot. to Compel 8.

draw requests." *See* App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-4 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, RFP No. 165), ECF No. 265 at 53.

The UDF Defendants incorporate by reference their General Objections and contend that this Request is "overbroad, unduly burdensome, and not proportional to the needs of this case" because it seeks "[a]ll documents and communications" "regarding draw requests," "without limitation as to time or to the properties at issue in the complaint." *Id.*

In their opposition to Megatel III's Motion to Compel, the UDF Defendants contend they "should not be compelled to produce more documents relating to draw requests because [they] ha[ve] already produced all draw requests related to the predicate act properties and associated loans as could be located after a reasonably diligent search." UDF Defs.' Opp'n to Pl.'s Mot. to Compel. 25-26. The UDF Defendants assert that "[t]his RFP was not limited to a reasonable time, or the properties at issue in the [Amended] Complaint. Thus, UDF properly met its discovery obligation in response to this request by producing documents related to draw requests on predicate act property loans." *Id.*

The Court previously sustained the UDF Defendants' General Objection based on lack of temporal scope and limited the scope of production to responsive documents dated from 2012 through 2022. *See supra* Sec. 4.A. And, while the Court overruled the UDF Defendants' attempt to limit discovery only to the Predicate Act Developments in the Amended Complaint, it also ruled that requests

for production that apply *exclusively* to Predicate Act Developments that Megatel stipulated would *not* be presented for liability or damages are unduly burdensome and disproportionate to the needs of the case. *See id.* The same rulings apply here. Accordingly, the Court will grant Megatel's motion to compel with respect to RFP No. 165, as modified by its rulings on the UDF Defendants' General Objections.

RFP No. 167 seeks "[a]ll documents and communications regarding the timing of distributions made by the UDF Entities to its investors." App. in Support of UDF Defs.' Opp'n to Pl.'s Mot. to Compel, Ex. A-4 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, RFP No. 167), ECF No. 265 at 54.

The UDF Defendants incorporate by reference their General Objections in response to RFP No. 167, including that the requests are overbroad, unduly burdensome, and not proportional to the needs of this case, without any limitation as to time and without connection to the allegations and properties in the Amended Complaint. *See id.*

As with RFP No. 165, the Court previously addressed these objections, *see supra* Sec. 4.A, and the same rulings apply here.

The UDF Defendants also object to RFP No. 167 based on relevance and because Megatel III is already in possession of the documents it seeks. *See id.*, Ex. A-4 (UDF Defs.' Resp. and Obj. to Megatel's First Set of Requests for Production, Obj. to RFP No. 167), ECF No. 265 at 54. In their opposition brief, the UDF Defendants argue that

[a]s for documents related to investor distributions, such requests are irrelevant and additional documentation of investor distributions would be cumulative. The timing of UDF's distributions to investors ha[s] nothing to do with any predicate act alleged in the Complaint. Even if [it did], Megatel is already in possession of such documents from the Criminal Case—and used them extensively in depositions. Consequently, additional discovery on distributions would be unreasonably cumulative and should be denied. *See* Fed. R. Civ. P. 26(b)(2)(C). In the depositions of UDF witnesses, Megatel introduced government exhibits from the criminal trial discussing UDF distributions that Megatel produced in this case. The use of these documents by Megatel not only demonstrates that Megatel is already in possession of such documents, it also proved their irrelevancy. For example, one email with the subject line "Cash" discusses the allocation of loans in "Celina 170, Lucas, Hickory Creek, and the Hebron Town Home Lots" for purposes of an upcoming distribution in UDF III. None of those properties are associated with the allegations in this case. Indeed, Megatel's attempt to seek documents such as these is nothing more than an attempt to inject the Criminal Case into this action in order to play on the prejudices of a jury.

UDF Defs.' Opp'n to Pl.'s Mot. to Compel. 25-26. In its reply brief, Megatel III does not challenge that it is already in possession of some of these documents from the Criminal Case. *See* Pl.'s Reply Br. 9-10.

With respect to documents related to investor distributions, the Court finds that the requested discovery, although potentially having some relevance, is duplicative of documents already in Megatel III's possession and, therefore, disproportionate to the needs of the case and unduly burdensome.

For these reasons, the Court **GRANTS** Megatel's Motion to Compel with respect to RFP No. 165 and **DENIES** Megatel's Motion to Compel with respect to RFP Nos. 7 and 167. The UDF Defendants' production of documents in response

to RFP No. 165 must be consistent with the Court's rulings on the UDF Defendants'
General Objections, *see supra* Sec. 4.A.

### E. RFP Nos. 15, 17, 27, 42, 93, 125, 136, 143, 150, 160, 196, 199, 202, 205-207

These Requests ask the UDF Defendants to produce documents and
communications that reflect or relate to any representations made by Moayedi
about the Predicate Act Developments or his ability to complete the Predicate Act
Developments timely. *See* App. in Support of Pl.'s Mot. to Compel, Ex. A-2 (UDF
Defs.' Resp. and Obj. to Megatel's Third Set of Requests for Production, RFP Nos.
196, 199, 202, 205-207), ECF No. 201 at 33-3; *id.*, Ex. A-8 (UDF Defs.' Resp. and
Obj. to Megatel's First Set of Requests for Production, RFP Nos. 15, 17, 27, 42, 93,
125, 136, 143, 150, 160), ECF No. 201 at 149-50, 155-56, 163-64, 192, 209-10, 215-
16, 219-20, 223-24, 229-30.

The UDF Defendants incorporate by reference their General Objections,
including that the requests are overbroad, unduly burdensome, and not
proportional to the needs of this case, without any limitation as to time, without
connection to the allegations in the complaint, and seek information relating to
Predicate Acts not found in the Amended Complaint, contending such Predicate
Acts are not actionable and are therefore irrelevant. *Id.*

The Court previously addressed the UDF Defendants' General Objections,
which largely overlap with their objections to these specific Requests for
Production, *see supra* Sec. 4.A, and the same rulings apply equally here. The UDF

Defendants' remaining objections to these Requests for Production, insofar as they are not resolved based on the Court's rulings on their General Objections, are **OVERRULED** as insufficient, given that minimal to no explanation for their objections is provided. *See Heller*, 303 F.R.D. at 490-92.

For these reasons, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 15, 17, 27, 42, 93, 125, 136, 143, 150, 160, 196, 199, 202, and 205-207. The UDF Defendants' production of documents in response to these requests must be consistent with the Court's rulings on the UDF Defendants' General Objections, *see supra* Sec. 4.A.

5. The Court GRANTS in part and DENIES in part Megatel's Motion to Compel Key Liability Documents from Mehrdad Moayedi (ECF No. 202).

Megatel III requests that the Court compel Moayedi to produce the following categories of documents, many of which overlap with the categories of documents Megatel III sought from the UDF Defendants, *see supra* Sec. 4:

• Relevant documents and communications previously identified, reviewed, and produced in related litigation (RFP No. 179);

• Documents and communications related to loans, repayment of loans, and specific wire transfers connected to the Predicate Act Developments (RFP Nos. 3, 4, 7-10, 18, 19, 31, 32, 48, 49, 62, 63, 68, 70, 71, 85, 86, 127, 128, 129, 154, 155, 180 and 184);

• Documents and communications related to Moayedi or Centurion's intention to honor their contracts with Megatel (RFP Nos. 11, 17, 84, 121, 124 and 142);

• Documents and communications related to draw requests and distributions (RFP Nos. 183 and 185);

• Documents and communications related to the funding and the development timeline for Predicate Act Developments (RFP Nos. 43, 56-58, 76-77, 102-104, 116-118, 137-139 and 148-150); and

• Documents Related to Particular Predicate Act Developments and the Centurion Entities' Finances (RFP Nos. 187-198 and 201-208).

In response to Megatel III's Motion to Compel, Moayedi states he "has confirmed he produced most, if not all, of the requested categories of documents and, with the exception of a few valid objections upon which Moayedi will stand, has not withheld any documents responsive to unobjectionable requests." Moayedi Resp. Br. 2-3, ECF No. 269.

## A. Preliminary Objections

The Court first addresses Moayedi's preliminary objections, or what Moayedi describes in his response brief as his "few valid objections upon which [he] will stand." *Id.* First, he objects generally to "requests which require production of documents" from Centurion on the basis that Centurion "is not a party to the lawsuit." *Id.* at 4. In support of this objection, Moayedi argues that "request[s] for documents targeted to [Centurion] are misdirected and should be sought directly from third-party [Centurion]." *Id.*

In reply, Megatel III contends that Moayedi waived this objection, and, in any event, Moayedi has "possession, custody, or control over the relevant Centurion entities and over the requested documents." Pl.'s Reply Br. 4, ECF No. 295.

The Court finds that Moayedi waived this objection because he did not assert it in response to the majority of Megatel III's relevant document requests. *See, e.g.*, App. in Support of Pl.'s Mot. to Compel, Ex. A-4 (Moayedi's Resp. & Obj. to Megatel's First Set of RFPs), ECF No. 203 at 75-218; *id.*, Ex. A-7 (Moayedi's Resp. & Obj. to Megatel's Second Set of RFPs), ECF No. 203 at 240-60. In response to Megatel's Second Set of Requests for Production, Moayedi asserted a general objection to Megatel's definition of Centurion and Centurion Entities as "misleading and vague" and that certain requests were not tailored to Moayedi in his "individual capacity." *See id.*, Ex. A-7 (Moayedi's Resp. & Obj. to Megatel's Second Set of RFPs), ECF No. 203 at 242, 244. These objections, however, are only asserted as to those requests and do not include or encompass the objections raised by Moayedi in his response brief that Centurion is not a party to the lawsuit and that Megatel's requests "require production of documents from Centurion American[.]" Moayedi Resp. Br. 4.

In addition, the record shows that Moayedi has possession, custody, and control of the documents sought. First, Moayedi has produced at least 18,613 emails from the Centurion domain (centurionamerican.com). *See* App. in Support of Pl.'s Reply Br. (filed under seal), Ex. A-1 (Decl. of Enrique Ramirez ¶ 5), ECF No. 318 at 6. Moayedi owns and controls Centurion and its affiliates. *Id.*, Ex. A-3 (e-mail with organizational chart), ECF No. 318 at 15-18 (sealed); *id.*, Ex. A-4 (Preliminary Limited Offering Memorandum covering a Centurion development),

ECF No. 318 at 56 (sealed); *id.*, Ex. A-13 (Moayedi Dep. Tr.), ECF No. 318 at 139 (sealed).

For these reasons, the Court **OVERRULES** Moayedi's objection that Megatel III's requests should be directed to specific Centurion entities rather than to him.

Second, Moayedi generally objects to the requests for production on the basis that the requests are "overbroad, unduly burdensome, disproportionate to the needs of the case, and request[] irrelevant information" because "many of the requests seek information regarding properties not pled in the First Amended Complaint [ECF No. 37] or properties stipulated out by Megatel III." Moayedi Resp. Br. 4. The Court **OVERRULES** Moayedi's objection to requests seeking information about properties "not pled in the First Amended Complaint." This objection ignores both the applicable discovery standard under Rule 26(b)(1)[13] and that the Court already permitted Megatel III to "streamline [its] civil action" to the Predicate Act Developments disclosed in Megatel's First Amended Complaint *and* Responses to the UDF Defendants' First Set of Interrogatories. *See* March 21, 2024 Dismissal Order 9-10.

---

[13] "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573 (N.D. Tex. 2018) (Horan, J.) (citation omitted) (cleaned up); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (Relevance is interpreted broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (citation omitted).

Moayedi's objection also ignores the pleadings and facts at issue in this case. As pointed out by Megatel III in its reply brief, "[t]he pleadings and allegations put all of Centurion's operations and business practices with UDF at issue." Pl.'s Reply Br. 6. The allegations in this case center around a purported massive fraudulent scheme between the UDF Defendants' executives and Moayedi, involving most of Centurion's business projects and operations, not only the developments explicitly named in the pleadings. *See* Am. Compl. ¶ 1 ("This case concerns a protracted and multi-faceted scheme to defraud Megatel, which provided collateral support and concealment of a separate Ponzi-like scheme involving hundreds of millions of dollars and manifold real estate development projects across North Texas."). Further, evidence introduced by Megatel III supports that UDF's funds meant for Predicate Act Developments were transferred and funneled to pay off other Centurion loans, rendering proportionate the broad scope of relevant discovery. *See, e.g.,* App. in Support of Pl.'s Reply Br. (filed under seal), Ex. A-8 (E-mail used in the criminal proceedings against UDF's executives (Case No. 4:21-CR-289-0) as Government Exhibit 101 and produced in this case by Megatel at Bates No. MEGATEL_0030772) (sealed), ECF No. 318 at 110-14; *id.*, Ex. A-9 (Letter agreement produced in this case by UDF at Bates No. UDFRICO_00373477 and used in depositions in this case as Plaintiff's Exhibit 74) (sealed), ECF No. 318 at 115-126.

With respect to Moayedi's objection to requests for production of documents concerning "properties stipulated out by Megatel III," *see* Moayedi Resp. Br. 4, in

its reply brief, Megatel III clarifies it "is no longer pursuing its Motion as to Requests for Production that apply exclusively to the Predicate Act Developments that Megatel stipulated would not be presented for liability or damages." Pl.'s Reply Br. 1 note 1. Accordingly, Moayedi's objections insofar as any requests seeking such documents is **OVERRULED as moot.**

The Court now turns to the specific requests for production.

### B. RFP No. 179

This request seeks documents produced in response to a grand jury subpoena or otherwise voluntarily produced to the Government in relation to the criminal trial against Defendants Hollis Greenlaw, Theodore F. Etter, Benjamin Wissink, and Brandon Jester. *See* App. in Support of Moayedi's Opp'n to Pl.'s Mot. to Compel, Ex. 1-A (Moayedi's Resp. and Obj. to Megatel's First Set of Requests for Production), ECF No. 270 at 144-45.

In his response brief, Moayedi states that he is standing by his objection that Megatel III is not entitled to the category of documents requested but, nevertheless, states that he has confirmed there are no documents responsive to this request. Moayedi Resp. Br. 5.

The Court previously sustained the UDF Defendant's objections to this same request, because, in light of Megatel's prior positions taken in this matter, the Court was not persuaded of significant overlap between the Criminal Case and SEC Case, on the one hand, and this case, on the other hand, such as to render

appropriate the expansive discovery sought. *See supra* Sec. 4.B.ii. The Court **SUSTAINS** Moayedi's objection to RFP No. 179 for the same reasons.

### C. RFP Nos. 3, 4, 7-10, 18, 19, 31, 32, 48, 49, 62, 63, 68, 70, 71, 85, 86, 127, 128, 129, 154, 155, 180, and 184

These requests seek documents and communications related to loans, repayment of loans, and specific wire transfers connected to the Predicate Act Developments. *See* App. in Support of Moayedi's Opp'n to Pl.'s Mot. to Compel, Ex. 1-A (Moayedi's Resp. and Obj. to Megatel's First Set of Requests for Production), ECF No. 270 at 11, 12, 14-16, 22-24, 32-34, 45-46, 56-57, 60-61, 62-63, 73-74, 104-106, 125-26, 145, 148.

In his response brief, Moayedi asserts that "he has confirmed he has produced no less than 1,020 documents responsive to these requests and has satisfied his burden to search for and produce documents in his possession." Moayedi Resp. Br. 5. He objects that a number of the requests in this category concern properties or predicate projects which are no longer part of this matter "as a result of Plaintiff's voluntary dismissal of parties as well as Plaintiff's stipulation it will not pursue a theory of liability or damages for those properties." *Id.* He states that "[t]he requests eliminated by stipulation are: Request Nos. 62, 63, 68, 70, 71, 127-129, 154, 155." *Id.* He also objects that he "is not obligated to produce documents related to properties or predicate projects that are no longer relevant to this lawsuit" and not obligated to produce documents related to properties that are not pled in Megatel III's First Amended Complaint (ECF No. 37). *Id.*

In its reply brief, Megatel III does not dispute Moayedi's contention that, based on Megatel III's stipulations, RFP Nos. 62, 63, 68, 70, 71, 127-129, 154, and 155 are eliminated. *See* Pl.'s Reply Br., *passim*. Accordingly, the Court **DENIES as moot** Megatel III's Motion to Compel with respect to RFP Nos. 62, 63, 68, 70, 71, 127-129, 154, and 155.

In previously considering Moayedi's preliminary objections, however, the Court overruled Moayedi's objections and arguments seeking to limit responsive documents to only those Predicate Act Developments discussed in Megatel's First Amended Complaint. *See supra* Sec. 5.A. In addition, having reviewed the various "gaps" in Moayedi's production,[14] and for the reasons set forth in Megatel III's Motion to Compel and its reply brief, the Court is not satisfied that Moayedi has "satisfied his burden to search for and produce documents in his possession." *See* Moayedi Resp. Br. 5 Accordingly, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 3, 4, 7-10, 18, 19, 31, 32, 48, 49, 85, 86, 180, and 184.

### D. RFP Nos. 11, 17, 84, 121, 124 and 142

These requests seek documents and communications related to Moayedi or Centurion's intention to honor their contracts with Megatel. *See* App. in Support of Moayedi's Opp'n to Pl.'s Mot. to Compel, Ex. 1-A (Moayedi's Resp. and Obj. to

---

[14] *See* App. to Pl.'s Reply Br. (filed under seal), Ex. A-2 (Deficiency Letter), ECF No. 318 at 8-12 (sealed); *id.*, Ex. A-1 (Decl. of E. Ramirez ¶¶ 6-7, ECF No. 318 at 6-7 (sealed).

Megatel's First Set of Requests for Production), ECF No. 270 at 17, 21-22, 72-73, 100-101, 102-103, 116.

Moayedi contends he has "met his burden to search for and produce documents responsive to th[ese] requests. Moayedi's records reflect at least 27 documents have been produced responsive to these requests." Moayedi Resp. Br. 6. He contends, however, that the RFP Nos. 121 and 124 concern properties and predicate projects Plaintiff has stipulated will not be pursued in this action. *Id.* He also argues that he "is not obligated to produce documents related to properties that are not pled in Megatel III's First Amended Complaint (ECF No. 37)." *Id.*

In its reply brief, Megatel III does not dispute Moayedi's contention that, based on Megatel III's stipulations, RFP Nos. 121 and 124 are eliminated. *See* Pl.'s Reply Br., *passim*. Accordingly, the Court **DENIES as moot** Megatel III's Motion to Compel with respect to RFP Nos. 121 and 124.

In considering Moayedi's preliminary objections, however, the Court already overruled Moayedi's objections and argument seeking to limit responsive documents to only those Predicate Act Developments discussed in Megatel's First Amended Complaint. *See supra* Sec. 5.A. In addition, having reviewed the various "gaps" in Moayedi's production, *see supra* note 14, and for the reasons set forth in Megatel III's Motion to Compel and its reply brief, the Court is not satisfied that Moayedi has "met his burden" to search for and produce documents in his possession. *See* Moayedi Resp. Br. 6. Accordingly, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 11, 17, 84, and 142.

### E. RFP Nos. 183 and 185

These requests seek documents and communications related to draw requests and distributions. *See* App. in Support of Moayedi's Opp'n to Pl.'s Mot. to Compel, Ex. 1-A (Moayedi's Resp. and Obj. to Megatel's First Set of Requests for Production), ECF No. 270 at 147-149.

Moayedi contends he "has produced responsive documents in his possession regarding draw requests and distributions." Moayedi Resp. Br. 6. Having reviewed the various "gaps" in Moayedi's production, *see supra* note 14, and for the reasons set forth in Megatel III's Motion to Compel and its reply brief, the Court is not satisfied that Moayedi has satisfied his burden to search for and produce documents in his possession. Accordingly, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 183 and 185.

### F. RFP Nos. 43, 56-58, 76-77, 102-104, 116-118, 137-139 and 148-150

These requests seek documents and communications related to the funding and the development timeline for Predicate Act Developments. *See* App. in Support of Moayedi's Opp'n to Pl.'s Mot. to Compel, Ex. 1-A (Moayedi's Resp. and Obj. to Megatel's First Set of Requests for Production), ECF No. 270 at 41-42, 51-54, 66-68, 86-88, 96-98, 112-14, 120-22.

Moayedi contends that RFP Nos. 76-77 and 137-139 are eliminated by stipulation. Moayedi Resp. Br. 6. In response to the remaining requests, Moayedi asserts that he "has identified and produced at least 34 responsive documents and

has not identified any additional responsive documents." *Id.* He also contends that he "is not obligated to produce documents related to properties that are not pled in Megatel III's First Amended Complaint (ECF No. 37)." *Id.*

In its reply brief, Megatel III does not dispute Moayedi's contention that, based on Megatel III's stipulations, RFP Nos. 76-77 and 137-139 are eliminated. *See* Pl.'s Reply Br., *passim*. Accordingly, the Court **DENIES as moot** Megatel III's Motion to Compel with respect to RFP Nos. 76-77 and 137-139.

In considering Moayedi's preliminary objections, however, the Court already overruled Moayedi's objections and argument seeking to limit responsive documents to only those Predicate Act Developments discussed in Megatel's First Amended Complaint. *See supra* Sec. 5.A. In addition, having reviewed the various "gaps" in Moayedi's production, *see supra* note 14, and for the reasons set forth in Megatel III's Motion to Compel and reply brief, the Court is not satisfied that Moayedi has satisfied his burden to search for and produce documents in his possession. Accordingly, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 43, 56-58, 102-104, 116-118, and 148-150.

### G. RFP Nos. 187-198 and 201-208

These requests seek documents related to particular Predicate Act Developments and the Centurion Entities' finances. *See* App. in Support of Pl.'s Mot. to Compel, Ex. A-2 (Megatel's Second Set of Requests for Production, RFP Nos. 187-198), ECF No. 203 at 57-60; App. in Support of Moayedi's Opp'n to Pl.'s

Mot. to Compel, Ex. 1-B (Moayedi's Resp. and Obj. to Megatel's Third Set of Requests for Production, RFP Nos. 201-208), ECF No. 270 at 159-66.

In response to requests for Centurion Entities' Finances, Moayedi asserts that he "has produced ledgers of relevant projects going back to at least 2010" and that he "is not obligated to produce documents related to properties that are not pled in Megatel III's First Amended Complaint (ECF No. 37)." Moayedi Resp. Br. 7.

In considering Moayedi's preliminary objections, however, the Court already overruled Moayedi's objections and argument seeking to limit responsive documents to only those Predicate Act Developments discussed in Megatel's First Amended Complaint. *See supra* Sec. 5.A. In addition, having reviewed the various "gaps" in Moayedi's production, *see supra* note 14, and for the reasons set forth in Megatel III's Motion to Compel and its reply brief, the Court is not satisfied that Moayedi has satisfied his burden to search for and produce all responsive documents in his possession. Accordingly, the Court **GRANTS** Megatel III's Motion to Compel with respect to RFP Nos. 187-198 and 201-208.

Finally, although it is difficult to set a temporal limitation for discovery given Megatel III's expansive allegations in the Amended Complaint, the Court finds it appropriate and proportional to the needs of the case to limit the temporal scope of responsive documents from Moayedi to 2012 through 2022.  Even if marginally relevant, the Court concludes that requests for the time period after 2022 are not

proportional to the needs of the case given the claims and defenses. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401, 402, 403.

6. The Court DENIES as moot the Relief Sought in Plaintiff's Motion to Quash Non-Party Subpoenas or, in the Alternative, Motion for Protective Order (ECF No. 178).

Megatel III moves to quash the Trez Capital Subpoenas; a Rule 45 subpoena Moayedi noticed an intent to serve on non-party Frontier State Bank; and the UDF Defendants' Rule 45 subpoena served on non-party Lane Gorman Trubitt (LGT). Pl.'s Mot. to Quash 8-11. In the alternative, Megatel III seeks a protective order on behalf of the non-parties. *Id.* at 11-14.

"A party's standing to quash subpoenas served on non-parties pursuant to Rule 45 is limited." *MC Trilogy Texas*, 2023 WL 7190652, at *3. The movant must be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena. *See id.* (citing *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). In this context, a party may establish a "personal right" to subpoenaed materials in limited circumstances, including when a subpoena seeks to discover personal bank or employment records, social networking accounts, or email inboxes. *See id.* (citation omitted). "Privilege" refers to protections afforded by the rules of evidence, including attorney-client privilege and work product protection. *See id.* (citing *Mobilitie Mgmt., LLC v. Harkness*, 2018 WL 11364084, at *1 (N.D. Ga. Mar. 12, 2018)). "A party challenging a subpoena issued to a non-party may not object on the grounds that it 'violates another person's privacy rights . . . , that the

subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds." *Deitz v. Performance Food Grp., Inc.*, 2021 WL 2715974, at *1 (W.D. Tex. Apr. 21, 2021) (citing *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, 2016 WL 3747613, at *3 (M.D. La. July 11, 2016)). Nonetheless, "[a] party does have standing to move for a protective order pursuant to Rule 26(c)(1) to challenge the scope of a subpoena even if the party does not have standing to move to quash the subpoena pursuant to Rule 45(d)." *Id.* (citation omitted).

### A. The Trez Capital Subpoenas

In light of the Court's decision to deny Moayedi's Motion to Compel Trez to produce documents responsive to the Trez Capital Subpoenas, *see supra* Sec. 2, the Court **DENIES as moot** Megatel's Motion to Quash the Trez Capital Subpoenas or, in the alternative, Motion for a Protective Order.

### B. The Frontier State Bank Subpoena

On February 21, 2024, Moayedi noticed an intent to serve a non-party subpoena on Frontier State Bank. *See* App. to Megatel's Mot. to Quash Third-Party Subpoenas, Ex. A-4 (Notice of Intent to Serve Subpoena to Produce Documents, Information, or Objects in a Civil Action), ECF No. 179 at 39-40.

The docket sheet does not reflect that Moayedi ever served the subpoena on Frontier State Bank and, unlike with the Trez Capital Subpoenas, Moayedi does not seek to compel any responses from Frontier State Bank. Accordingly, as to the

Frontier State Bank subpoena, the Court **DENIES as moot** Megatel's Motion to Quash or, in the alternative, Motion for Protective Order.

### C. The LGT Subpoena

On February 19, 2024, the UDF Defendants noticed an intent to serve a non-party subpoena to LGT (the "UDF Subpoena"), a third-party accounting firm used by Megatel for various projects, with a compliance date of March 1, 2024, at 5:00 p.m. *Id.*, Ex. A-1 (Notice of Intent to Serve Revised Third-Party Subpoena to Lane Gorman Trubitt), ECF No. 179 at 5-10. The UDF Subpoena consists of the following five requests for production of documents for the date range of 2012 to 2022:

1. All Documents and Communications concerning Your preparation of any accounting records, financial statements, tax filings, or audits completed on behalf of Megatel or MCI, or pertaining to Megatel or MCI.

2. All Documents provided to You by Megatel that were used to prepare accounting records, financial statements, tax filings, or audits on Megatel's or MCI's behalf, or pertaining to Megatel or MCI.

3. All financial statements concerning Megatel or MCI.

4. All Documents and Communications concerning Megatel or MCI.

5. All Documents and Communications reflecting any transfer of funds between or among Megatel, MCI, and Megatel Capital Investment LLC.

*Id.*, Ex. A-1, ECF 179 at 16-17.

Megatel III moves to quash the UDF Subpoena because it impermissibly seeks "privileged, commercial, trade secret, or otherwise protected information."

Pl.'s Mot. to Quash 8. Megatel III contends it has standing to move to quash the UDF Subpoena because it has "possession, custody, and control" of many of the requested documents and "has a personal right in these documents, as they consist of Megatel's sensitive, confidential, and proprietary business information." *Id.* at 8-9. In addition, Megatel III asserts it has standing because it "has a personal right in its own confidential financial records." *Id.* In the alternative, Megatel III moves for a protective order contending that the UDF Subpoena is "facially overbroad" and "unduly burdensome." *Id.* at 12.

In April, the UDF Defendants withdrew their subpoena to LGT. *See* Notice (ECF No. 271). Therefore, the Court **DENIES as moot** Megatel III's Motion to Quash as to the UDF Subpoena to LGT.

7. The Court DENIES as moot Plaintiff's Omnibus Motion to Quash Non-Party Subpoenas (ECF No. 181).

Megatel III moves to quash 82 third-party subpoenas issued by Moayedi on February 28, 2024. Omnibus Mot. to Quash, ECF No. 181. After the motion was fully briefed, on March 29, 2024, Moayedi notified the Court that, "with the exception of [the Trez Capital Subpoenas], all third-party subpoenas issued by Moayedi to financial institutions or investors doing business with current and former Plaintiffs have been either satisfied or withdrawn" as of March 29, 2024. Notice of Satisfaction or Withdrawal of Third-Party Subpoenas 1-2, ECF No. 267.

In light of Moayedi's Notice, and because the Court has already denied Moayedi's Motion to Compel with respect to the Trez Capital Subpoenas, *see supra*

Sec. 2, the Court **DENIES as moot** Plaintiff's Omnibus Motion to Quash Non-

Party Subpoenas.

> 8. The Court GRANTS Non-Party Scarborough Lane Development, Inc.'s
> Motion to Quash and DENIES as moot its Motion for Protective Order
> (ECF No. 171).

Non-Party    Scarborough    Lane    Development,    Inc.    (Scarborough

Development) has filed a Motion to Quash, seeking an order under Federal Rule of

Civil Procedure 45(d)(3) quashing a subpoena served on it by Megatel as well as a

protective order. Megatel's subpoena served on Scarborough Development seeks,

for the time period of 2012 to 2022:

> 1. All communications between You, Moayedi and/or any Centurion Entity that
> relate to substantial completion of the Centurion Developments.

> 2. All documents and communications regarding payments you received from
> UDF on behalf of Moayedi and/or any Centurion Entity.

> 3. All documents and communications between You, Moayedi, or any
> Centurion Entity that reflect any representations Moayedi or any Centurion
> Entity made regarding its dealings with, business relationship with, or
> contractual obligations to, Megatel.

> 4. All documents and communications between You, Moayedi, or any
> Centurion Entity that reflect any representations Moayedi or any Centurion
> Entity made regarding the sale or potential sale of any property or lots that
> Megatel ever had a contractual interest in, including those property interests
> outlined in Plaintiffs' First Amended Complaint.

App. in Support of Non-Party Scarborough Lane Development, Inc.'s Mot. to

Quash (Scarborough App.), Ex. 1-A (Subpoena), ECF No. 172 at 15. "You," "Your,"

or "Scarborough" is defined as "Scarborough Lane Management, LLC

('Scarborough Management'), and includes its respective directors and officers,

agents, representatives, partners, employees, affiliates, and includes individuals and entities who act, have acted, purport to act, or have purported to act on its behalf." *Id.*, Ex. 1-A, ECF No. 172 at 14.

In support of its Motion to Quash, Scarborough Development maintains that it lacks "possession, custody and control of responsive documents"; that the subpoena is "facially overly broad"; that the subpoena "imposes an unreasonable burden" on it as a non-party; and the subpoena "seeks confidential documents." Mem. in Support of Non-Party's Mot. to Quash 5-9, ECF No. 173. Scarborough Development has also filed objections to the Subpoena, including objections based on overbreadth, vagueness, and undue burden, and objects that the Subpoena seeks documents to which it has access but does not have a right to possession, custody, or control. Scarborough App., Ex. 2 (Obj. to Subpoena), ECF No. 172 at 17-28.

Megatel III opposes Scarborough Development's Motion to Quash. *See* Pl.'s Resp. Br., ECF No. 232. For the reasons explained below, the Court finds that Megatel III has not met its burden of establishing that Scarborough Development has possession, custody, and control of the documents sought and, therefore, the Court grants Scarborough Development's Motion to Quash.

The Fifth Circuit has held that a subpoena requesting all documents to which an individual "has access" is overbroad because Rule 34 requires only the production of documents in that person's possession, custody, or control. *Wiwa,* 392 F.3d at 821; *see also WesternGeco LLC v. Ion Geophysical Corp.,* 2010 WL

2266524, at *2 (S.D. Tex. June 2, 2010) (denying plaintiff's motion to compel with respect to an entity because, in light of *Wiwa*, "even assuming [that entity] does have access to documents in the possession of its affiliates—this is insufficient to establish possession, custody, or control as required under the Federal Rules"). "[W]hether one entity has 'control' over material in the actual possession of another entity, the meaning of the phrase 'possession, custody, or control' is the same whether the issue arises out of a subpoena issued pursuant to Rule 45 or a request for production under Rule 34." *Sarl v. Samsung Telecommc'ns Am. LLC*, 2014 WL 12776170, at *2 (N.D. Tex. Apr. 1, 2014) (Solis, J.) (citations omitted).

Under Rule 34, "documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit." *Hoffman v. L&M Arts*, 2013 WL 12284632, at *3 (N.D. Tex. Oct. 2, 2013) (Fitzwater, J.) (quoting *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011)). "Under this principle, discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation." *Shell Glob. Sols.*, 2011 WL 3418396, at *2 (citation omitted). The party seeking discovery bears the burden to show "that the other party has control over the documents sought." *S. Filter Media, LLC v. Halter*, 2014 WL 4278788, at *5 (M.D. La. Aug. 29, 2014) (citation omitted).

"Typically, . . . to establish control over documents in the possession of a non-party," the party seeking discovery must show "that there is a relationship,

either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession." *Id.* (citations and internal quotation marks omitted). Courts apply the following factors to determine "whether one corporation may be deemed under control of another":

> (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation.

*Shell Glob. Sols.*, 2011 WL 3418396, at *2 (citing *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004)); *accord United My Funds, LLC v. Perera*, 2020 WL 1225042, at *8 (E.D. Tex. Mar. 12, 2020).

Scarborough Development argues it lacks possession, custody, and control of documents responsive to the subpoena because, to the extent there are documents not in the possession, custody, or control of the Moayedi entities, "those documents would be in the possession, custody, or control of [Scarborough] Management, not [Scarborough] Development." Mem. in Support of Non-Party's Mot. to Quash 6.

Megatel III responds that Scarborough Development's "own evidence confirms, at minimum, that it has 'control' over the documents and information at issue." Pl.'s Resp. Br. 3. Specifically, Megatel III points to the Declaration of Ryan Burkhardt, President of Scarborough Development, filed as part of Scarborough

Development's appendix in support of its Motion to Quash. In his Declaration, Burkhardt states that Scarborough Management "is a distinct and completely separate entity" from Scarborough Development and "is a subsidiary of [Scarborough] Development." Scarborough App., Ex. 1 (Burkhardt Decl. ¶ 5), ECF No. 172 at 5. He notes that "[a]lthough the Subpoena was served on [Scarborough] Development, the Subpoena appears to seek documents from [Scarborough] Management, not [Scarborough] Development" and explains that Scarborough Management "is given access to certain data and documents when it enters into contracts with real estate developers." *Id.*, Ex. 1 (Burkhardt Decl. ¶ 7), ECF No. 172 at 5. He states that Scarborough Development "may have access to documents responsive to the subpoena but merely by virtue of the fact that it owns [Scarborough] Management." *Id.*, Ex. 1 (Burkhardt Decl. ¶ 8), ECF No. 172 at 6. And, in establishing the undue burden of responding to the Subpoena, Burkhardt notes that responding to such a Subpoena would cost in "excess of $10,000.00" and the "only thing [Scarborough Development] could do [to respond] is search servers that are owned and controlled by the parties in the above captioned litigation." *Id.*, Ex. 1 (Burkhardt Decl. ¶ 13), ECF No. 172 at 6.

Megatel III does not explain how Scarborough Development is in control of Scarborough Management, other than pointing to Burkhardt's Declaration concerning "access," noting that Scarborough Management is a subsidiary of Scarborough Development, and that responding to the subpoena would cost in excess of $10,000. Notwithstanding Megatel III's argument that Scarborough

Development's evidence "concedes" it has control over Scarborough Management, the Court does not interpret Burkhardt's Declaration as sufficient for Megatel III to meet its burden. *See S. Filter Media, LLC*, 2014 WL 4278788, at *5. Further, Megatel III does not discuss any of the previously mentioned factors for evaluating control with respect to corporate relationships. Accordingly, the Court finds the record insufficient to determine whether Scarborough Development controls any documents that may be in the possession, custody, or control of its subsidiary Scarborough Management. Megatel III has not met their burden to establish Scarborough Development's control over any documents not within its immediate possession, custody, or control—that is, those documents that Scarborough Development would have to ask permission from an affiliated entity or subsidiary in actual possession to obtain. Therefore, the Court will not require Scarborough Development to produce those documents in actual possession, custody, or control of Scarborough Management.

For these reasons, the Court GRANTS Scarborough Development's Motion to Quash and DENIES as moot its Motion for Protective Order. Scarborough Development is, therefore, under no obligation to produce any documents responsive to the subpoena or otherwise comply with the Subpoena.[15]

---

[15] In the alternative, even assuming Megatel III has met its burden of establishing that Scarborough Development has possession, custody, and control over the documents sought, after viewing the *Wiwa* factors holistically, the Court finds that the subpoena should be quashed. *See Wiwa*, 392 F.3d at 818 (in determining whether a subpoena imposes an undue burden under Rule 45(d)(3)(a)(iv), the court analyzes the following non-exclusive factors: relevance, the need of the party

9. The Court GRANTS in part and DENIES in part Plaintiff Megatel Homes III, LLC's Combined Motion to Compel Discovery from D.R. Horton, Inc., Crescent Estates Custom Homes, LP, Peloton Land Solutions, Inc., and Riveron Consulting, LLC (ECF No. 204).

Megatel III moves to compel discovery from non-parties D.R. Horton, Inc., Crescent Estates Custom Homes, LP (Crescent Estates), Peloton Land Solutions, Inc. (Peloton Land), and Riveron Consulting, LLC (Riveron). While D.R. Horton filed untimely objections to a validly-served subpoena for documents, the remaining three non-parties have failed to file any response to validly-served subpoenas for documents.

On December 5, 2022, Megatel I, Megatel II, and Megatel III served a subpoena duces tecum on non-party D.R. Horton with a compliance date of January 25, 2023. *See* Return of Service, ECF No. 86. The subpoena was served on D.R. Horton's registered agent, CT Corporation System. *Id.* There is no dispute that service of the subpoena was proper. On April 23, 2024, well over a year after the deadline for filing objections and/or moving to quash, D.R. Horton filed a response and objections informing the Court that, based on discussions between

---

for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed.). Scarborough Development has shown that the subpoena imposes an undue burden because, while Megatel III is seeking at least some relevant information, the need is insufficient (given the Court's order granting in large part Megatel's Motion to Compel Key Liability Documents from Moayedi), the breadth of the RFPs is too great, and the expense and inconvenience imposed on Scarborough Development is burdensome. *See* Scarborough App., Ex. 1 (Burkhardt Decl. ¶ 13), ECF No. 172 at 6. The Court, therefore, concludes that Scarborough Development will face an undue burden if required to comply with the Subpoena and GRANTS its Motion to Quash on this basis.

its in-house counsel and counsel who represented Megatel at the time, "D.R. Horton understood that it did not need to respond to the subpoena or produce documents until further notice from Megatel." D.R. Horton's Resp. and Obj. 2, ECF No. 307. D.R. Horton "denies that it has waived its right to object to the subpoena." *Id.*

On December 16, 2022, Megatel I, Megatel II, and Megatel III served a subpoena duces tecum on non-party Crescent Estates with a compliance date of January 14, 2023. *See* Return of Service, ECF No. 93. The subpoena was served on Crescent Estates' registered agent, Moayedi. *Id.* There is no dispute that service of the subpoena was proper. Since that date, Crescent Estates has not served any objections or responses to the subpoena and never moved to quash or for protection from the subpoena.

On January 24, 2024, Megatel I served a subpoena duces tecum on non-party Peloton Land with a deadline of compliance on February 23, 2024. *See* Return of Service, ECF No. 146. The subpoena was served on Peloton Land's registered agent, CT Corporation System. *Id.* There is no dispute that service of the subpoena was proper. Since that date, Peloton Land has not served any objections or responses to the subpoena and never moved to quash or for protection from the subpoena.

On January 17, 2024, Megatel I served a subpoena duces tecum on Riveron with a compliance date of February 16, 2024. *See* Return of Service, ECF No. 143. The subpoena was served on Riveron's registered agent, Capitol Corporate

Services, Inc. *Id.* There is no dispute that service of the subpoena was proper. Since that date, Riveron has not served any objections or responses to the subpoena and never moved to quash or for protection from the subpoena.

Federal Rule of Civil Procedure 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "The failure to serve written objections to a subpoena within the time specified by Rule [45(d)(2)(B)] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 448 (N.D. Tex. 2015) (Horan, J.) (cleaned up) (citations omitted); *see also La. Generating, L.L.C. v. Ill. Union Ins. Co.*, 2011 WL 6259052, at *2 (M.D. La. Dec. 14, 2011) ("Courts within the Fifth Circuit have consistently held that failure to serve timely objections to a Rule 45 subpoena generally results in a waiver of all grounds for objection, including privilege.") (citations omitted). "But courts have also held that the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown." *Andra Grp.,* 312 F.R.D. at 448 (cleaned up) (citations omitted).

### A. D.R. Horton and Crescent Estates

In their briefing, Megatel III and D.R. Horton represented that they were actively seeking to resolve disagreements without court involvement. *See* D.R. Horton's Resp. and Obj. 4, ECF No. 307; Megatel III's Reply Br. 1 at note 1, ECF No. 312. The Court, therefore, directed D.R. Horton and Megatel III to file a joint report by July 17, 2024, notifying it whether they had reached a resolution. *See* Order, ECF No. 322. On July 17, 2024, the parties filed their Joint Notice informing the Court that "[o]n May 14, 2024[,] D.R. Horton produced approximately 6,167 pages of documents and communications." Joint Notice 2, ECF No. 325. Nevertheless, as of July 17, 2024, Megatel III stated it is still "unable to confirm that D.R. Horton has produced all documents," but by the end of July 2024, it will be in "a position to assess D.R. Horton's production and if its subpoena has been satisfied." *Id.* at 2. The parties have not provided further updates.

While the Court encourages the parties to continue to resolve the matter amicably, given that the matter apparently has not been fully resolved, the Court will rule on the motion. Since its receipt of the subpoena, D.R. Horton has been working with Megatel's counsel (both current and former) to resolve its objections without court intervention. This is exactly the type of cooperation intended by the Federal Rules of Civil Procedure and rules of this Court. *See* Fed. R. Civ. P. 1 (providing that the federal rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Dondi Props. Corp. v. Commerce Savs. & Loan Ass'n,* 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) (per curiam)

(adopting standards of litigation conduct for attorneys appearing in civil actions in the Northern District of Texas). Thus, the Court disagrees with Megatel III that D.R. Horton has waived its objections by waiting to formally respond to the subpoena.

By contrast, Crescent Estates has wholly failed to respond to the subpoenas. As such, the Court agrees with Megatel III that it has waived any objection to the subpoenas' burden, relevance, or breadth. *See Andra Grp.,* 312 F.R.D. at 448; *La. Generating, L.L.C.,* 2011 WL 6259052, at *2. Here, even if the Rule 45-time limitation could be excused under special circumstances, evidence before the Court shows that Crescent Estates had sufficient notice and time to review the subpoena or file a motion to quash or modify the subpoena. Crescent Estates failed to use the proper procedural mechanisms afforded to them to protect their interest in the documents.

Further, for the reasons set forth by Megatel III (*see* Mot. to Compel 5-11), the Court is persuaded that the subpoenas served on Crescent Estates seek documents and communications that are relevant to Megatel III's allegations and purported damages. *See* Fed. R. Civ. P. 26(b)(1). The subpoenas, however, do not contain any date range for the requested documents rendering the document requests overly broad. *See* ECF Nos. 86, 93. As previously stated, the Court finds the relevant date range is 2012 to 2022. *See supra* Sec. 1.C. With this date range imposed, the Court determines that the subpoenas are proportional to the needs of the case and not unduly burdensome. In addition, as previously stated in ruling

on other motions, *supra*, Requests for Production that apply *exclusively* to Predicate Act Developments that Megatel III has since stipulated would not be presented for liability or damages are of limited relevance, unduly burdensome, and disproportionate to the needs of the case.

### B. Peloton Land and Riveron

While Megatel I, Megatel II, and Megatel III served the subpoenas at issue on D.R. Horton and Crescent Estates, only Megatel I served the subpoenas on Peloton Land and Riveron. *See* ECF Nos. 143 (Riveron subpoena) and 146 (Peloton Land subpoena). Megatel I is no longer a party. *See* March 21, 2024 Dismissal Order 9-11.

Federal Rule of Civil Procedure 45(d)(2)(b)(i) provides, in pertinent part, as follows:

> (i) At any time, on notice to the commanded person, *the serving party* may move the court for the district where compliance is required for an order compelling production or inspection.

Fed. R. Civ. P. 45(d)(2)(B)(i) (emphasis added).

The Court finds that Megatel III does not have standing to compel the production of information from Peloton Land and Riveron since it did not serve the subpoenas. *See* Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Troice v. Proskauer Rose L.L.P.*, 2015 WL 13729620, at *2 (N.D. Tex. Mar. 9, 2015) (finding that only the issuing party listed on a subpoena has standing to compel the production of information from the party upon which the subpoena was served); *TravelPass Grp., LLC v. Caesars Ent. Corp.*, 2021 WL 2492858, at *13 (E.D. Tex. May 4, 2021)

(stating in dicta that was "not persuaded" that a party who did not serve a subpoena would "have standing to move to compel the production of information" from the party upon whom the subpoena was served); *Joint Stock Co. Channel One Russia Worldwide v. Infomir L.L.C.*, 2018 WL 6712769, at *5 n. 5 (S.D.N.Y. Nov. 30, 2018) ("Defendant Infomir did not serve the Subpoenas, and thus has no standing to enforce them.").[16]

For these reasons, the Court DENIES Megatel's Motion to Compel with respect to the subpoenas served on D.R. Horton, Peloton Land, and Riveron. D.R. Horton, Peloton Land, and Riveron, therefore, are under no obligation to produce any documents responsive to the subpoenas served on them or to otherwise comply with the subpoenas. The Court GRANTS Megatel's Motion to Compel against Crescent Estates, deems its objections waived and/or overrules any forthcoming objections made by Crescent Estates, and orders Crescent Estates to amend its response to the subpoena, comply with the subpoena (as modified), conduct a good faith search of its records, and produce documents responsive to the requests therein within 10 days of notice of this Order.

10. The Court GRANTS in part and DENIES in part Plaintiff Megatel Homes III, LLC's Combined Motion to Compel Discovery from Non-Parties First Texas Homes, Inc., Mattamy Homes Title Agency, LLC, and Silver Star Title, LLC (ECF No. 206).

---

[16] Alternatively, even assuming Megatel III had served the subpoenas on Peloton Land and Riveron, the Court would quash the subpoenas. Megatel III's need for the documents sought is insufficient given the Court's order granting, in large part, Megatel's Motion to Compel Key Liability Documents from Moayedi, *see supra* Sec. 5, which appear to be duplicative of the documents Megatel III seeks to compel from these two non-parties. *See Wiwa*, 392 F.3d at 818.

Megatel III moves to compel discovery from non-parties First Texas Homes, Inc., Mattamy Homes Title Agency, LLC (Mattamy), and Silver Star Title, LLC. Specifically, Megatel III requests that the Court enter an order compelling these parties to comply with validly served subpoenas for documents. Pl.'s Mot. to Compel 4. According to Megatel III:

> Megatel served subpoenas on First Texas Homes and Mattamy Homes, homebuilders involved in several of the developments related to Megatel's allegations. These builders had extensive communications with Defendant Moayedi and his affiliates, and ultimately took down lots originally under contract to Megatel. Due to Moayedi's deficient productions, Megatel also subpoenaed Silver Star Title, the title company used by Defendant Moayedi in the vast majority of the relevant real estate developments.

*Id.*

In response, the homebuilders and Silver Star Title issued a series of objections and, in addition to filing objections, First Texas Homes and Mattamy filed responses in opposition to Megatel III's Motion to Compel. None of the third parties has produced any documents in response to the respective subpoenas.

**A. First Texas Homes**

On January 17, 2024, Megatel I served a subpoena duces tecum on First Texas Homes—a home builder involved in several of the developments which acquired lots allegedly lost by Megatel III as part of Moayadi's allegedly fraudulent scheme—requesting documents concerning housing developments. *See* Return of Service, ECF No. 144. The subpoena was served on First Texas Homes' registered

agent, Keith Hardesty. *Id.* There is no dispute that service of the subpoena was proper.

On February 1, 2024, First Texas Homes served its objections and responses to the subpoena. *See* App. in Support of Megatel Homes III, LLC's Combined Mot. to Compel Discovery from Non-Parties (Megatel III App.), Ex. A-1 (Non-Party First Texas Homes, Inc.'s Obj. to Subpoena), ECF No. 207 at 5-9. First Texas Homes has also filed a response in opposition to Megatel III's Motion to Compel arguing, *inter alia*, that Megatel III lacks standing to compel production because only Megatel I served the subpoena and suggesting that the discovery should be sought from Centurion or Moayedi instead. First Texas Homes' Resp. Br. 2-5, ECF No. 309.

As was the case with the subpoenas served on Peloton Land and Riveron, *see supra* Sec. 9.B, the Court agrees with First Texas Homes and finds that because Megatel I is the only party that served First Texas Homes with the subpoena, it is the sole party with standing to compel the production of information from First Texas Homes. *See* Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Troice*, 2015 WL 13729620, at *2 (finding that only the issuing party listed on a subpoena has standing to compel the production of information from the party upon which the subpoena was served); *TravelPass Grp., LLC*, 2021 WL 2492858, at *13 (stating in dicta that was "not persuaded" that a party who did not serve a subpoena would "have standing to move to compel the production of information" from the party upon whom the subpoena was served); *Joint Stock Co. Channel*, 2018 WL 6712769,

at *5 n. 5 ("Defendant Infomir did not serve the Subpoenas, and thus has no standing to enforce them.").

Further, the Court finds unavailing Megatel III's attempt to distinguish *Troice* and its contention that the Court's March 21, 2024 Dismissal Order allows it to compel documents based on subpoenas served by Megatel I. *See* Pl.'s Reply Br. 2-4 ECF No. 313. The March 21, 2024 Dismissal Order only pertained to Megatel I's and Megatel II's continued duty *to respond* to then-pending discovery requests as a condition of dismissal and in no way authorized them to seek discovery from non-parties once dismissed or to allow Megatel III to seek to enforce subpoenas in their stead. *See* March 21, 2024 Dismissal Order 11.[17]

### B. Mattamy

On December 2, 2022, Megatel I, Megatel II, and Megatel III served a subpoena duces tecum on Mattamy—another home builder involved in the developments related to Megatel III's allegations—requesting documents and communications concerning lots in numerous developments, including the Riverwalk Development. *See* Return of Service, ECF No. 87. The subpoena was served on Mattamy's registered agent. *Id.*

---

[17] Alternatively, even assuming Megatel III had served the subpoena on First Texas Homes, the Court would quash the subpoena. Megatel III's need for the documents sought is insufficient given the Court's order granting, in large part, Megatel's Motion to Compel Key Liability Documents from Moayedi, *see supra* Sec. 5, which includes documents that are likely duplicative of the documents Megatel III seeks to compel from First Texas Homes. *See Wiwa*, 392 F.3d at 818.

On December 13, 2022, Mattamy served its objections and responses to the subpoena, but did not dispute that service of the subpoena was proper. *See* Megatel III App., Ex. A-2 (Mattamy's Obj. and Resp. to Pl.'s Subpoena), ECF No. 207 at 10-15. Mattamy's response contains boilerplate objections to both the definitions and the RFPs in the subpoena. *See id.*, Ex. A-2, ECF No. 207 at 12-15. As to RFP Nos 1-3 and 6, Mattamy responds that "no responsive documents exist" subject to its boilerplate objections. *See id.* at Ex. A-2, ECF No. 207 at 14-15.

Mattamy's responses to RFP Nos. 5 and 7 also contain boilerplate objections, but do not indicate whether it is in possession of any responsive documents. *See id.* at Ex. A-2, ECF No. 207 at 14-15.

In support of its Motion to Compel, Megatel III contends that (1) Mattamy's boilerplate "objections are improper[] and should be overruled. Mattamy cannot avoid its obligation to comply with the Federal Rules by copying and pasting identical objections with no explanation of the basis for its objection"; and (2) the subpoena seeks relevant and "specific documents and communications related to developments Mattamy worked on or were offered to work on with Centurion Entities and Moayedi" and Mattamy has offered no explanation to date as to how the subpoena is "overbroad, confusing, vague, or unduly burdensome." Megatel III's Mot. to Compel 12-13.

On April 15, 2024, Mattamy filed its response to Megatel III's Motion to Compel stating that it "withdraws its objections to Plaintiff's subpoena and confirms herewith that it has no responsive documents." Mattamy's Resp. Br. 1,

ECF No. 299. "Given that Mattamy [ ] has withdrawn its objections and that it has confirmed that it has no responsive documents," it "request[s] that Plaintiff's Motion to Compel be denied, in part, as to Mattamy [ ]." *Id.* at 2. It also asserts that "Mattamy Title" is the "incorrect entity" and the correct entity for service is Mattamy Texas, LLC. *Id.* Finally, Mattamy states that "[t]he undersigned attorneys have agreed to accept service of any subpoena upon Mattamy Texas." *Id.*

In reply, Megatel III urges the Court to "disregard Mattamy's new objection that Mattamy is the 'incorrect entity' and that thus has 'no responsive documents'" for the following reasons: (1) Mattamy's new objection is untimely, as it was not asserted in its objections or in a motion to quash; (2) Mattamy's new objection is "improper, vague, and unclear," as it provides no clarification or explanation regarding the basis of its untimely objection; and (3) Mattamy has already "agreed to produce affiliate documents" that are in its "possession, custody, or control." Megatel III's Reply Br. 2-3, ECF No. 311. Alternatively, Megatel III requests that the Court "overrule Mattamy's untimely objection because Mattamy expressly withdrew all its objections." *Id.* at 4.

Insofar as Mattamy is objecting that it is the "incorrect entity" and that, for this reason, it has "no responsive documents," the Court **OVERRULES** this objection as untimely. Mattamy asserts this objection for the first time in its response brief, but it failed to assert this objection in a motion to quash or in its objections to the subpoena. *See Jim S. Adler, P.C. v. McNeil Consultants, LLC, 2022 WL 1624785, at *1 (N.D. Tex. May 23, 2022)* ("Rule 45 provides specific

protections to non-parties that may only be enforced through objections by the non-party or a motion to quash a subpoena.") In addition, Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises – or to producing electronically stored information in the form or forms requested" – and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).

Moreover, because Mattamy has already "agreed to produce affiliate documents" that are in its "possession, custody, or control," the Court **OVERRULES** its objection that it is the "incorrect entity" and that, for this reason, it has "no responsive documents." In its original objections to Megatel's subpoena seeking affiliate documents, served in 2022, Mattamy asserted in relevant part:

> To the extent that any Request seeks documents or information from any entity other than the recipient of this subpoena—which is Mattamy Homes Title Agency, LLC ("Mattamy")—and to the extent this subpoena seeks documents or information from Mattamy's employees, agents, subsidiaries, parents, affiliates, or anyone acting on its behalf, Mattamy will respond to, answer, and produce documents based on information and documents within Mattamy's possession, custody, or control.

Megatel III App., Ex. A-2 (Mattamy's Obj. and Resp. to Pl.'s Subpoena), ECF No. 207 at 12.

Further, for the reasons set forth by Megatel III (*see* Mot. to Compel 5-11; Pl.'s Reply Br. 1), the Court is persuaded that the subpoena served on Mattamy seeks documents and communications that are relevant to Megatel III's allegations and purported damages. *See* Fed. R. Civ. P. 26(b)(1). The subpoena, however, does not contain any date range for the requested documents rendering the document requests overly broad. *See* ECF Nos. 87. As previously stated, *see* *supra* Sec. 1.C, the Court finds the relevant date range is 2012 to 2022. With this date range imposed, the Court determines that the subpoena is proportional to the needs of the case and not unduly burdensome.

## C. Silver Star Title

On January 24, 2024, Megatel I served a subpoena duces tecum on Silver Star Title—requesting documents concerning housing developments. *See* Return of Service, ECF No. 152. The subpoena was served on Silver Star Title's registered agent. *Id.* There is no dispute that service of the subpoena was proper.

As was the case with the subpoena served on First Texas Homes, because Megatel I is the only party that served Silver Star Title with the subpoena, it is the sole party with standing to compel the production of information from Silver Star Title. *See* Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* *Troice*, 2015 WL 13729620, at *2 (finding that only the issuing party listed on a subpoena has standing to compel the production of information from the party upon which the subpoena was served); *TravelPass Grp., LLC*, 2021 WL 2492858, at *13 (stating in dicta that was "not persuaded" that a party who did not serve a subpoena would "have standing

to move to compel the production of information" from the party upon whom the subpoena was served); *Joint Stock Co. Channel*, 2018 WL 6712769, at *5 n. 5 ("Defendant Infomir did not serve the Subpoenas, and thus has no standing to enforce them.").[18]

For these reasons, the Court DENIES Megatel III's Motion to Compel with respect to First Texas Homes and Silver Star Title, and GRANTS Megatel III's Motion to Compel with respect to Mattamy, deems Mattamy's new objections waived, and orders Mattamy to amend its response to Plaintiff's subpoena, conduct a good faith search of its records, and produce documents responsive to Plaintiff's subpoena (as modified above) within 10 days of the date of Notice of this Order. Documents that pertain to Requests for Production that apply exclusively to Predicate Act Developments that Megatel III has since stipulated would not be presented for liability or damages are of limited relevance, unduly burdensome, and disproportionate to the needs of the case, and need not be produced.

11. The Court DENIES any request for an award of expenses or attorneys' fees.

*Federal Rule of Civil Procedure 37* provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion to compel was

---

[18] Alternatively, even assuming Megatel III had served the subpoena on Silver Star Title, the Court would quash the subpoena. Megatel III's need for the documents sought is insufficient given the Court's order granting, in large part, Megatel's Motion to Compel Key Liability Documents from Moayedi, *see supra* Sec. 5, which includes documents that are likely duplicative of the documents Megatel III seeks to compel from Silver Star Title. *See Wiwa*, 392 F.3d at 818.

filed, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A).

Substantial justification is met "if there is a genuine dispute" or "if reasonable people could differ as to appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations omitted) (cleaned up); *see also* 8B Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2288 n.31 (3d ed. 2023) (quoting Advisory Committee's Note to the 1970 amendment to R. 37, 48 F.R.D. 487, 540 ("On many occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists.")).

Under the circumstances presented here, and given the procedural complexity involved in this case, the Court finds there was a substantial

justification for discovery objections and a genuine dispute over discovery. Therefore, the Court DENIES any requests for any award of fees and costs.

### Conclusion

In the manner and to the extent set forth above, the Court:

1. **GRANTS in part** and **DENIES in part** UDF's Motion to Compel Megatel to Produce Financial Documents (ECF No. 147), as supplemented (*see* ECF No. 214). Specifically, the Court GRANTS the motion with respect to Megatel I and Megatel II and DENIES the motion with respect to Megatel III. Megatel I and Megatel II are **ORDERED** to produce, within 10 days of this Order, to the extent not previously produced, all non-privileged documents responsive to the UDF Defendants' RFP Nos. 10-11, 13-14, 16-19, 68, and 70-76 for the time period between 2012 and 2022.

2. **DENIES** Defendant Mehrdad Moayedi's Motion to Compel Third Parties Trez Capital Funding, LLC's and Trez Capital Funding II, LLC's Compliance with Subpoenas for Document Production (ECF No. 212).

3. **GRANTS** UDF's Motion to Compel Complete Interrogatory Responses from Plaintiffs (ECF No. 197). Megatel III is **ORDERED** to provide, within ten days of this Order, complete responses to the UDF Defendants' Special Interrogatories 1 and 2.

4. **DENIES in part** and **GRANT in part** Plaintiff's Motion to Compel Key Liability Documents from UDF Defendants (ECF No. 200). Specifically, the Court DENIES the motion with respect to Megatel's Motion to Compel responses to RFP Nos. 7, 167, 172, 174, 176, 184, and 187-194 and GRANTS the motion with respect to the remaining requests for production. The UDF Defendants are **ORDERED** to produce, to the extent not previously produced, all non-privileged documents responsive to these remaining requests, within 10 days of this Order, to the extent of, and as modified by, the Court's rulings on the UDF Defendants' General Objections, *see supra* Sec. 4.A.

5. **DENIES in part** and **GRANTS in part** Megatel's Motion to Compel Key Liability Documents from Mehrdad Moayedi (ECF

No. 202). Specifically, the Court DENIES the motion as moot with respect to Megatel III's motion to compel responses to RFP Nos. 62, 63, 68, 70, 71, 76, 77, 121, 124, 127-129, 137-139, and 154; DENIES the motion with respect to RFP No. 179; and GRANTS the motion with respect to the remaining requests for production. Moayedi is **ORDERED** to produce, to the extent not previously produced, all non-privileged documents responsive to these remaining requests, within 10 days of this Order, to the extent of, and as modified by the Court.

6. **DENIES as moot** Plaintiff's Motion to Quash Non-Party Subpoenas or, in the Alternative, Motion for Protective Order (ECF No. 178).

7. **DENIES as moot** Plaintiff's Omnibus Motion to Quash Non-Party Subpoenas (ECF No. 181).

8. **GRANTS** Non-Party Scarborough Lane Development, Inc.'s Motion to Quash and **DENIES** as moot its Motion for Protective Order (ECF No. 171).

9. **DENIES in part** and **GRANTS in part** Plaintiff Megatel Homes III, LLC's Combined Motion to Compel Discovery from Non-Parties D.R. Horton, Inc., Crescent Estates Custom Homes, LP, Peloton Land Solutions, Inc., and Riveron Consulting, LLC (ECF No. 204). Specifically, the Court DENIES the motion to compel as to D.R. Horton, Inc., Peloton Land Solutions, Inc., and Riveron Consulting, LLC, and GRANTS the motion to compel as to Crescent Estates Custom Homes, LP, which is **ORDERED** to conduct a good faith search of its records, and produce documents, responsive to the requests in the Rule 45 subpoena Megatel III served upon it (as modified), within 10 days of notice of this Order.

10. **DENIES in part** and **GRANTS in part** Plaintiff Megatel Homes III, LLC's Combined Motion to Compel Discovery from Non-Parties First Texas Homes, Inc., Mattamy Homes Title Agency, LLC, and Silver Star Title, LLC (ECF No. 206). Specifically, the Court DENIES the motion to compel as to Non-Parties First Texas Homes, Inc. and Silver Star Title, LLC, and GRANTS the motion to compel as to Non-Party Mattamy Homes Title Agency, LLC, which is **ORDERED** to

conduct a good faith search of its records, and produce documents, responsive to the requests in the Rule 45 subpoena Megatel III served upon it (as modified), within 10 days of notice of this Order.

The Court further **DENIES** any request for reasonable expenses incurred in making any of the above-listed motions, including attorney's fees, as well as any relief not specifically granted by this Omnibus Discovery Order.

SO ORDERED.

September 4, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE