IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MEGATEL HOMES III, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:20-cv-00688-L-BT |
| | § | |
| MEHRDAD MOAYEDI, et al., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM ORDER**

Before the Court is UDF's Motion to Enforce Megatel's Compliance with Omnibus Discovery Order, ECF No. 337. For the reasons that follow, the motion is **GRANTED in part**.[1]

## **Background**

The parties are familiar with the factual and procedural history of this litigation, and the Court only recounts the background facts required to provide context for its rulings.[2]

This case arises out of an alleged scheme to defraud a Texas homebuilding company comprised of Megatel Homes, LLC (MHI or Megatel I), Megatel Homes

---

[1] Pursuant to 28 U.S.C. § 636(b) and a Standing Order of Reference, ECF No. 253, United States District Judge Sam A. Lindsay has referred all discovery matters in this civil action to the undersigned.

[2] For a general recitation of the underlying facts and procedural history in this case, the Court incorporates by reference the factual background set forth in *Megatel Homes, LLC v. Moayedi, et al.*, 2022 WL 2306949 (N.D. Tex. June 27, 2022) (Lindsay, J.) and in the Omnibus Discovery Order, ECF No. 327.

II, LLC (MHII or Megatel II), and Megatel Homes III, LLC (MHIII or Megatel III) (sometimes collectively, "Megatel").[3] On March 20, 2020, Megatel filed an Original Complaint against Defendant Mehrdad Moayedi, founder and operator of Centurion American Custom Homes d/b/a Centurion American Development Group (collectively, "Centurion")—a real estate development company. Megatel also sued the UDF Defendants—various entities comprising a family of investment funds that finance land development projects, as well as the founders and employees of those entities.[4]

At present, the remaining claims are Megatel's claims against Moayedi for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. §§ 1962(a)-(c), and a RICO conspiracy claim against Moayedi and the UDF Defendants under 18 U.S.C. § 1962(d) (based on the predicate acts of mail fraud, wire fraud, and interstate transportation of stolen property); and claims

---

[3] In the Declaration of Zach Ipour submitted in support of Megatel's Response in Opposition to UDF's Motion to Enforce, Megatel I and Megatel II collectively are defined as "Megatel," whereas Mr. Ipour states that he and his brother separately are "co-founders and principals of Megatel Homes III, LLC [i.e. Megatel III]." Megatel's Resp. App., Ipour Decl. ¶ 2, ECF No. 348 at 6. He also states that "[t]he Megatel family of entities consists of dozens of homebuilding and non-homebuilding entities." *Id.*, Ipour Decl. ¶ 3, ECF No. 348 at 7. And, he states that only "Megatel is a homebuilder." *Id.*, Ipour Decl. ¶ 4, ECF No. 348 at 7. The Court recognizes this distinction. Nevertheless, at times, and for purposes of this Order only, the Court uses the term "Megatel" collectively.

[4] For purposes of this Order, "UDF" or "UDF Defendants" refer to Defendants United Development Funding, L.P.; United Development Funding II, L.P.; United Development Funding III, L.P.; United Development Funding IV; United Development Funding Income Fund V; UMT Services, Inc.; UMT Holdings, L.P.; Hollis Greenlaw; Theodore F. Etter; Benjamin Wissink; and Brandon Jester. The Court sometimes refers to the entity Defendants as the "UDF Entities."

against Moayedi for common law fraud, fraudulent inducement, and statutory fraud.[5]

During discovery, a dispute ensued pertaining to the UDF Defendants' requests for production seeking Megatel's financial information. Ultimately, after unsuccessfully conferring, the UDF Defendants sought to compel financial documents and data relating to Megatel's damages theory including, among other things, profit and loss (P&L) statements, balance sheets, projected construction costs, and financial information provided to potential and actual lenders/investors. *See* UDF's Mot. to Compel Megatel to Produce Financial Docs. (ECF No. 147), as supplemented (ECF No. 214) ("Mot. to Compel").

In February 2024, while UDF's Motion to Compel was pending, Megatel filed a motion to dismiss Megatel I and Megatel II without prejudice. *See* Pls.' Mot. to Dismiss 1, ECF No. 176.[6] Defendant Mehrdad Moayedi and the UDF Defendants opposed the motion contending, among other things, that Megatel "should not be permitted to shield discovery into Megatel I's and Megatel II's financial performance by nonsuiting those entities, while continuing to seek damages based on that same performance by those entities." UDF Defs.' Resp. Br. 4, ECF No. 208.

On March 21, 2024, the District Judge granted Megatel's motion to dismiss,

---

[5] *See Megatel Homes, LLC v. Moayedi, et al.*, 2021 WL 5360509 (N.D. Tex. Nov. 16, 2021); *Megatel Homes, LLC v. Moayedi, et al.*, 2021 WL 5325919 (N.D. Tex. Nov. 16, 2021); and *Megatel Homes, LLC v. Moayedi, et al.*, 2022 WL 2306949 (N.D. Tex. June 27, 2022).

[6] Citations to the record refer to the CM/ECF page number at the top of each page rather than page numbers at the bottom of each filing.

but dismissed Megatel I and Megatel II with prejudice. *See* March 21, 2024 Dismissal Order 9, ECF No. 257. As a condition of dismissal, however, he

> order[ed] Megatel I and Megatel II to comply with all discovery orders issued by [the Magistrate Judge], unless . . . modified by the [Court]. The parties, however, must not only show that the discovery request was timely, but also that the discovery requested is still relevant in light of this order dismissing Megatel I and Megatel II and limiting the predicate acts.

*Id.* at 11.

On September 4, 2024, the undersigned granted UDF's Motion to Compel. *See* Omnibus Discovery Order 13-16, ECF No. 327. As a threshold matter, the Court found that the UDF Defendants "have met their burden under the Court's March 21, 2024 Dismissal Order of showing that the financial information they seek to compel . . . remains relevant and falls within the broad scope of discovery under Rule 26(b)(1)." *Id.* at 19. In addition, the Court found the requested financial documents and/or data remained relevant because Megatel III's "lost profits damages theory is [based on] . . . the financial performance of a conglomeration of Megatel affiliates, including MHI and MHII." *Id.* at 19. And, the Court concluded that

> the documents and communications the UDF Defendants seek to compel have relevance to the claims asserted against the UDF Defendants in the Amended Complaint and are important to (i) resolving the expansive claims of fraud and RICO conspiracy, and (ii) allowing the UDF Defendants to marshal a defense. *See* Fed. R. Civ. P. 26(b)(1) (permitting "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"). Having put "its financial picture in controversy," Megatel's financial records are relevant and necessary for the UDF Defendants to test Megatel's damages theory and defend against Megatel's claims.

*Id.* at 20-21 (citations omitted).

For these reasons, the Court ordered Megatel I and Megatel II, on or before September 16, 2024, to produce "all non-privileged documents responsive to the UDF Defendants' RFP Nos. 10-11, 13-14, 16-19, 68, and 70-76 for the time period between 2012 and 2022." *Id.* at 93.

As recently recognized by Judge Lindsay, *"[n]o party appealed or filed objections to the Omnibus Discovery Order, and, as such, it is the law of the case."* Order 1-2, ECF No. 360 (emphasis in original).

In their Motion to Enforce, the UDF Defendants assert that, despite numerous conferences with opposing counsel requesting production, and opposing counsel's repeated promises that production of responsive documents was forthcoming, Megatel I and Megatel II have "(1) fail[ed] to produce any documents or data responsive to several of UDF's Requests for Production"; "(2) produc[ed] only a handful of balance sheets and [P&Ls] with glaring gaps from crucial time periods"; and "(3) forc[ed] UDF to chase MHI and MHII for the documents and/or data they were ordered to produce back in late summer." UDF's Mem. of Law in Support of Mot. to Enforce 7 ("UDF Defs.' Br."), ECF No. 338.

The UDF Defendants ask the Court to enforce the Omnibus Discovery Order and again require Megatel I and Megatel II "to produce all documents and/or data responsive to [RFP] Nos. 13, 14, 17, and 19, and to produce documents and/or data responsive to RFP Nos. 10, 11, 72, and 75 for every quarter between 2012–2022

with sufficient detail." Mot. to Enforce 1. If MHI and MHII claim not to possess additional documents responsive to these RFPs, the UDF Defendants request an order: "(1) requiring them to submit a sworn affidavit attesting to that fact and explaining the process they undertook to search for responsive documents, and (2) requiring them to produce their tax returns for the years 2012–2022." *Id.* at 1-2. Finally, the UDF Defendants request the issuance of a non-monetary sanction in the form of "an order precluding Megatel [III] from using or relying on MHI and MHII's past financial performance for any purpose in this case." *Id.* at 2.

In response, Megatel contends that "UDF has contrived a dispute about Megatel's document production that does not actually exist." Pl.'s Resp. in Opp. to UDF's Mot. to Enforce 12 ("Pl.'s Resp. Br."), ECF No. 347. Megatel argues that "UDF uses its current Motion to impermissibly alter the meaning of its [RFPs] and unilaterally expand Megatel's discovery obligations, as outlined in the Court's Order." *Id.* at 6.  According to Megatel, it "produced thousands of documents in response to the Court's Order. UDF's complaints about the few remaining Requests are nothing more than a refusal to accept the reality that Megatel has no additional, responsive documents." *Id.* at 12.

## Legal Standard

Rule 37(b)(2) of the Federal Rules of Civil Procedure Rule "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed. R. Civ. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including

attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions.").

"The district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith*, 685 F.3d at 488 (internal quotation marks omitted). "This discretion, however, is limited" based on the type of sanctions imposed. *Id.*

The United States Court of Appeals for the Fifth Circuit has explained that its "caselaw imposes a heighted standard for litigation-ending sanctions (sometimes called 'death penalty' sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are 'just' and 'related to the particular claim' which was at issue in the order to provide discovery." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (cleaned up).

"The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances." *Taghavi v. Soto*, 2023 WL 6544905, at *6 (N.D. Tex. Oct. 6, 2023) (Horan, J.) (citing *Smith*, 685 F.3d at 488-90).

Sanctions are proper when "clear and convincing evidence" indicates "(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court order."

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002) (internal quotation marks and citation omitted). Intent is not an element of civil contempt; the issue is whether the alleged contemnor has complied with the court's order. *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987) (citation omitted). Even "an unintentional violation of a discovery order may lead to civil sanctions, though the court should consider the degree of willfulness in determining the appropriate sanction." *G.K. v. D.M.*, 2023 WL 2316213, at *4 (E.D. La. Jan. 25, 2023), *adopted by*, 2023 WL 2302993 (E.D. La. Mar. 1, 2023)

## Analysis

### A. Megatel I and Megatel II failed to comply with the Omnibus Discovery Order.

#### 1. *Megatel's Redactions*

In response to the UDF Defendants' Motion to Enforce, Megatel asserts that it has complied with the Omnibus Discovery Order and that, on December 16, 2024, it produced annual, audited financials for the time period between 2012 and 2022. *See* Pl.'s Resp. Br. 9-10. Megatel explains that, within that production, it redacted documents that contained "irrelevant, non-responsive financial information" about Megatel entities not "the subject of this lawsuit." *See id.*

The UDF Defendants argue that Megatel has "improperly redacted huge portions of financial documents, further obscuring the limited financial information provided to UDF." UDF Defs.' Reply 9, ECF No. 353. The UDF

Defendants request that the Court order "MHI and MHII to reproduce unredacted versions of these documents." *Id.* at 10.

Other courts in this District have repeatedly held that redactions based on relevance are disfavored under the discovery rules. *See, e.g.*, *U.S. Risk, LLC v. Hagger*, 2022 WL 209746, at *5 (N.D. Tex. Jan. 24, 2022) (Godbey, J.) ("[T]he Court agrees with U.S. Risk that piecemeal redactions to responsive documents based on relevance are disfavored under the discovery rules.") (citation omitted); *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017) (Horan, J.) (A responding party "cannot redact nonprivileged information from any responsive document because the information is not itself responsive[]."). "Redaction is, after all, 'an alteration of potential evidence, and a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.'" *Pavillion Bank v. OneBeacon Am. Ins. Co.*, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013) (Toliver, J.) (quoting *United States ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013)) (cleaned up). "This position finds support in the rules governing document production." *Id.* (citing Fed. R. Civ. P. 34(b)(2)(E)(i) (requiring a party to produce documents as they are kept in the usual course of business)).

As summarized by another court in this District, three themes pervade decisions on the propriety of redactions:

(1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an in camera inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege.

*TNA Australia Pty Ltd. v. PPM Techs., LLC*, 2018 WL 2010277, at *15 (N.D. Tex. Apr. 30, 2018) (Horan, J.) (quoting *ex rel. Simms*, 292 F.R.D. at 386) (declining to allow redactions of responsive documents or conduct an in camera review where protective order sufficiently addressed concerns regarding trade secrets and confidentiality).

The Court finds the rationale set forth in these opinions to be persuasive and well-reasoned. The Court, therefore, concludes that Megatel was not entitled to unilaterally redact information it believed to be irrelevant or non-responsive to the UDF Defendants' RFPs. Further, any concerns regarding proprietary information and confidentiality are sufficiently addressed by the Protective Order to which the parties agreed, ECF No. 92, as it provides protections for the responsive information that Megatel must produce.

For these reasons, with respect to Megatel's unilateral redactions, the Court **GRANTS** the UDF Defendants' Motion to Enforce and **DIRECTS** Megatel to

amend its responses and provide the UDF Defendants with unredacted copies of all documents currently produced in redacted form.[7]

### 2. *RFP Nos. 72 and 75*

In the Omnibus Discovery Order, the Court granted UDF's Motion to Compel with respect to RFP Nos. 72 and 75, which requested:

> • Request No. 72: "All financial data, whether projected or actual, provided to lenders, investors, or vendors between January 1, 2012, and March 20, 2020, relating to the Properties."

> • Request No. 75: "All accounting data between January 1, 2012, and March 20, 2020, that reflects the amount received and date of receipt of any sales proceeds or any payment of expenses relating to the Properties, including but not limited to general ledgers and trial balances."

The UDF Defendants maintain that Megatel I and Megatel II continue to withhold financial data sent to lenders (RFP No. 72) and accounting data related to home sales and costs (RFP No. 75). Specifically, with regard to RFP No. 72, the UDF Defendants state that "MHI and MHII produced one document and its

---

[7] Defendant Mehrdad Moayedi has informed the Court that, by virtue of a subpoena he served on a third party, he is in possession of documents and information demonstrating that Megatel has not produced all documents responsive to production requests propounded by the UDF Defendants. *See* Def. Mehrdad Moayedi's Joinder in, and Supplement to, UDF's Mot. to Enforce Megatel's Compliance with Omnibus Discovery Order 1, ECF No. 343 (sealed). He proposes he be allowed to submit the pertinent documents to the Court for *in camera* review. *Id.* at 2. In his reply brief, Moayedi indicates that the documents at issue comprise or include the redacted documents that Megatel produced in December 2024. *See* Def. Moayedi's Reply 2, ECF No. 351. Given the Court's order granting in part the UDF Defendants' Motion to Enforce, and its directive that Megatel provide unredacted copies of previously redacted documents to the UDF Defendants, the Court declines to consider Moayedi's invitation to conduct an *in camera* review of any documents.

attachments from 2015" and "have not produced any other lender and investor data for the relevant time period." UDF Defs.' Br. 14 (citation omitted). With regard to RFP No. 75, the UDF Defendants contend that MHI and MHII have "yet to provide detailed home sales and cost data as requested." *Id.* at 14-15. As to the "scattering" of documents produced, they argue that "the transactional detail contained within these documents lack[s] the revenue data necessary to discern MHI and MHII's profit margins on a home-by-home basis." *Id.* at 15.

In response, Megatel contends it "produced all financial data sent to lenders and investors related to the Properties," as requested in RFP No. 72. Pl.'s Resp. Br. 13. With respect to RFP No. 75, it asserts that "[t]here are no sales revenues related to the Properties and even if there were Megatel is not required to create new documents for the purpose of production during litigation." *Id.* at 14.

Megatel further argues that "any financial documents or data related to" phases of the disputed developments in which Megatel has not alleged wrongdoing are outside the scope of RFPs 72 and 75. *Id.* at 7. Megatel contends that the UDF Defendants' definition of "Properties" in its RFPs limits the scope of requested documents. Thus, Megatel submits, because RFP Nos. 72 and 75 request documents and data relating to the "Properties," Megatel has fully complied with the Court's Omnibus Discovery Order. *Id.* at 7, 14.

The Court rejects Megatel's characterization of the scope of RFP Nos. 72 and 75 and of the Court's Omnibus Discovery Order. The UDF Defendants defined "Properties" to mean

any properties or developments that are the subject of any contract or agreement between Megatel and any Defendant and that forms the basis of or *relates to the allegations in the Complaint*, including but *not* limited to those properties and developments identified in the Complaint at paragraphs 38(a)-(m).

App. to Pl.'s Resp. Br. at Ex. A-8, Doc. 348 at 36 (emphasis added).

This definition is broad and includes no phase limitation. Hence, RFP Nos. 72 and 75 capture documents without limitation to specific phases of the developments. Further, a phase limitation finds no basis in the Court's previous ruling granting the UDF Defendants' Motion to Compel. And, the Court already concluded these documents are relevant. *See* Omnibus Discovery Order 20-21 (finding that, having put "its financial picture in controversy," Megatel's "financial records are relevant and necessary for the UDF Defendants to test Megatel's damages theory and defend against Megatel's claims."); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) (holding that relevance is interpreted broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (citation omitted).

The Court also agrees with the UDF Defendants that Megatel's newly asserted burden argument (*see* Pl.'s Resp. Br. 11-12) comes too late. *See* UDF Defs.' Reply 5, ECF No. 353. In the Omnibus Discovery Order, the undersigned found that Megatel I and Megatel II had "waived any objections to the document production requests." Omnibus Discovery Order 23.

Further, RFP No. 75 specifically requests that MHI and MHII provide "data" regarding home sales and costs. While Megatel is not required to create completely new documents, as the UDF Defendants correctly note, "that is not the same as requiring a party to query an existing dynamic database for relevant information." UDF Defs.' Br. 19-20 (quoting *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.,* 325 F.R.D. 36, 51 (E.D.N.Y. 2018)). Here, the parties anticipated the potential production of data earlier in the litigation by including processes for searching and producing data in the Stipulated Electronically Stored Information Production Protocol. *See* ECF No. 89 at 9.[8]

For these reasons, the Court **GRANTS** the UDF Defendants' Motion to Enforce with respect to RFP Nos. 72 and 75 and **DIRECTS** Megatel to amend its responses and provide the UDF Defendants with all responsive documents and data requested.

### 3. *RFP Nos. 10 and 11*

In the Omnibus Discovery Order, the Court granted UDF's Motion to Compel with respect to RFP Nos. 10 and 11, which requested:

> • Request No. 10: "Your balance sheets from 2013 to the present on a monthly basis."

> • Request No. 11: "Your profit and loss statements from 2013 to the present on a monthly basis."

---

[8] The relevant section states that "the producing Party may comply with . . . discovery request[s] by querying the database and generating a report . . . in a reasonably usable and exportable electronic format (for example, in Excel or .CSV format)." *See* ECF No. 89 at 9.

The UDF Defendants contend that Megatel I and Megatel II have failed to produce all required balance sheets and P&Ls. UDF Defs.' Br. 17. In response, Megatel contends that it "repeatedly explained to UDF throughout the discovery process [that it] does not create monthly balance sheets or profit and loss statements." Pl.'s Resp. Br. 12. Further, Megatel asserts

> Request Nos. 10 and 11 are specific and narrow. The Requests specifically ask for *monthly* balance sheets and profit and loss statements. UDF could have requested monthly, quarterly, and/or annual financial statements. But they did not. UDF could have requested all balance sheets and profit and loss statements for a particular period, but they did not. UDF specifically requested *monthly* balance sheets and profit and loss statements. Because none exist, the inquiry could end there.

*Id.* (original emphasis). Megatel explains that, nevertheless, "in an attempt to resolve UDF's concerns and comply with the Court's Order[,] [it] produced previously generated quarterly balance sheets and profit and loss statements, as well as annual, consolidated audited financials, redacted as appropriate." *Id.* Megatel states it has produced "36 of 48 quarterly profit and loss statements and balance sheets." *Id.* at 12-13. Megatel further explains that "[t]he absence of some quarterly financial records could be explained by the fact that Megatel does not produce quarterly financials on a regular basis or that Megatel's primary lender does not require quarterly financials to conduct business with Megatel." *Id.* at 13.

In reply, the UDF Defendants contend that Megatel's "semantic excuse betrays the reasoning of the Court's [Omnibus] Discovery Order, elevating form over substance in a way that Megatel itself does not even believe has merit based

on its prior conduct." UDF Defs.' Reply 7. The UDF Defendants also note that "MHI and MHII have not sworn that the missing quarterly balance sheets and P&Ls for 18 of the 44 relevant quarters do not exist, only that they need not produce them." *Id.*

As a threshold matter, the Court declines to endorse Megatel's position that because it produces no monthly balance sheets and P&Ls, and RFP Nos. 10 and 11 request monthly documents, it has satisfied its burden. The Court will not entertain this overly technical reading of RFP Nos. 10 and 11.[9] While Megatel may not have monthly statements, it admits it has quarterly statements and has provided some of these to the UDF Defendants.  Because MHI's and MHII's 2012-2022 finances are "relevant and necessary for UDF to test Megatel's damages theory and defend against Megatel's claims," *see* Omnibus Discovery Order 20-21, it must produce any remaining quarterly financials responsive to RFP Nos. 10 and 11 for the time period of 2012 to 2022.

For these reasons, the Court **GRANTS** the UDF Defendants' Motion to Enforce with respect to RFP Nos. 10 and 11 and **DIRECTS** Megatel to amend its responses and provide the UDF Defendants with all responsive documents and data requested.

---

[9] The Court notes that Megatel did not disclaim possession of monthly documentation until after the Omnibus Discovery Order. This delay is prejudicial to the UDF Defendants because it denied them an opportunity to issue RFPs that specify the inclusion of "quarterly" statements and P&Ls. To accept Megatel's position would unjustifiably reward it for this delay and elevate form over substance.

### 4. *RFP Nos. 13, 14, 17, and 19*

In the Omnibus Discovery Order, the Court granted UDF's Motion to Compel with respect to RFP Nos. 13, 14, 17 and 19, which requested:

> • Request No. 13: "Documents sufficient to show Your liabilities from 2013 to the present on a monthly basis."
>
> • Request No. 14: "Documents sufficient to show your liabilities from 2013 to the present on a monthly basis."
>
> • Request No. 17: "All Documents and Communications relating to any cash or capital shortage You suffered between 2013 and the present, including but not limited to documents reflecting Your inability to pay debts or perform under any agreements."
>
> • Request No. 19: "All Documents and Communications relating to any rejected requests for financing from any bank or other person from 2013 to the present."

In support of their Motion to Enforce, the UDF Defendants contend that "MHI and MHII have refused to produce documents and/or data responsive to UDF's RFP Nos. 13, 14, 17, and 19, without justification, and therefore must submit a sworn affidavit explaining the steps they took to locate responsive documents and/or data." UDF Defs' Br. 21.

In response, with respect to RFP Nos. 13 and 14, Megatel contends it does "not generate monthly cash flow statements or monthly liability trackers," and "cannot be compelled to produce documents that do not exist." Pl.'s Resp. Br. 17. As to RFP Nos. 17 and 19, Megatel contends "[t]here are no responsive documents reflecting non-existent cash flow shortage or financing rejections that never occurred." *Id.*

The Court previously rejected Megatel's position that, because the RFPs specifically sought monthly documents, and it does not generate these, it need not produce any documents. *See supra* Sec. A.3. For the same reasons, the Court rejects Megatel's identical argument with respect to RFP Nos. 13 and 14.

And, for the same reasons set forth above, *see supra* Sec. A.2, the Court finds that assertions of undue burden have been waived. *See* Omnibus Discovery Order 23 (finding that Megatel I and Megatel II "waived any objections to the document production requests.").

In addition, as previously found, while Megatel is not required to create completely new documents, it is required to query existing databases for relevant and responsive information. *See supra* Sec. A.2.

Finally, a party who claims that no responsive materials exist for certain RFPs may be required to submit a "sufficiently detailed" explanation of why they do not exist "so that the court can determine whether [it] has made a reasonable inquiry and has exercised due diligence, as Rule 26(g)(1) requires." *See Coleman v. Cedar Hill Indep. Sch. Dist.*, 2022 WL 1470957, at *5 (N.D. Tex. May 10, 2022) (Fitzwater, J.).

On the record presented, and given Megatel's delay in production, the Court agrees with the UDF Defendants that a sworn affidavit is required here.

For these reasons, the Court **GRANTS** the UDF Defendants' Motion to Enforce with respect to RFP Nos. 13, 14, 17, and 19 and **DIRECTS** Megatel to

amend its responses and provide the UDF Defendants with all responsive documents and data requested.

### 5. Tax Returns

The UDF Defendants ask the Court "to require MHI and MHII to produce their tax returns if they cannot provide UDF with the other financial information requested and previously ordered." UDF Defs.' Br. 23.

In the Omnibus Discovery Order, the Court declined to compel production of Megatel I's and Megatel II's respective tax returns because those documents would be "duplicative of the financial information [UDF] sought from MHI and MHII," which this Court ordered them to produce. On this basis, the Court concluded "there has been no showing of a compelling need for them." Omnibus Discovery Order 23, 25.

Again, the Court reaches the same conclusion.

## B. Sanctions

Pursuant to Federal Rule of Civil Procedure 37, the UDF Defendants request the issuance of a non-monetary sanction in the form of "an order precluding Megatel [III] from using or relying on MHI and MHII's past financial performance for any purpose in this case." Mot. to Enforce 2.

In response, Megatel asserts that "[a] determination that Megatel's subsequent production is deficient in some way would be wholly attributable to Megatel's legitimate misunderstanding or unresolved disputes regarding the outer bounds of responsive documents." Pl.'s Resp. Br. 26. Further, if the Court

ultimately determines that Megatel's production warrants sanctions, it "urges the Court to impose a lesser sanction than the death penalty sanction proposed by UDF, including, for example, the payment of UDF's attorneys' fees for the drafting of the Motion to Enforce." *Id.* at 27.

On the record presented, imposing the requested sanction—an order precluding Megatel III from using or relying on Megatel I's and Megatel II's past financial performance for any purpose in this case—would be excessive under the circumstances for purposes of achieving the goals of compelling production of evidence, reimbursing the UDF Defendants, and deterring Megatel and other potential violators of discovery orders.

Under Rule 37(b)(2)(C), however, the Court determines that Megatel has not shown that its failures to produce responsive documents were substantially justified, and the Court finds that no other circumstances make an award of expenses unjust.

The Court will, under Rule 37(b)(2)(C), require Megatel to pay the UDF Defendants their reasonable attorney's fees and costs incurred in preparing and filing both the UDF Defendants' Motion to Compel (ECF No. 147), as supplemented (ECF No. 214) and the UDF Defendants' Motion to Enforce (ECF No. 337), as well as the reply briefs and the appendices in support of each of these motions.

The UDF Defendants, no later than **June 27, 2025**, must file an application establishing the amount of the reasonable attorney's fees and costs to be awarded.

The fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and citations to relevant authorities and must set forth the itemized number of hours expended in connection with the recoverable attorney's fees described above as well as the reasonable rate(s) requested. *See generally Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). The application may also include a request for recovery of the fees incurred in preparing and filing this fee application itself.

## Conclusion

For the foregoing reasons, the Court **GRANTS in part** UDF's Motion to Enforce Megatel's Compliance with Omnibus Discovery Order, ECF No. 337. The Court **ORDERS** Megatel I and Megatel II to produce all documents and/or data responsive to RFP Nos. 13, 14, 17, and 19, and to produce documents and/or data responsive to RFP Nos. 10, 11, 72, and 75 for every quarter between 2012–2022. Further, the Court **ORDERS** Megatel I and Megatel II to produce unredacted copies of all previously redacted documents. In the event MHI and MHII claim not to possess additional documents responsive to any of these RFPs, the Court **ORDERS** Megatel I and Megatel II to submit a sworn affidavit attesting to that fact and explaining the process they undertook to search for responsive documents. All amendments to responses and production ordered herein must be made no later than **June 20, 2025**.

SO ORDERED on June 9, 2025.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE